Joseph **BENNETT**, Norbert Moffett, Remo F. Galli, Thomas J. Kiely, Jr., Joseph Milani, Theodore Morris, III, Theodore Andrezejcyk and Franklin Bullock, Trustees of Shopmen Iron Workers Welfare Plan (of Philadelphia and Vicinity) and Marvin Glickman, William L. Kern, Robert Reithmiller, Frank Spaniel, Norbert Moffett, Theodore Andrezejcyk, Franklin Bullock, and Harry Maniscalso, Trustees of Shopmen's Local Union No. 502 Pension Plan

v.

**MACHINED METALS CO., INC.**

Civ. A. No. 83–4080.

United States District Court,
E.D. Pennsylvania.

Aug. 1, 1984.

Robert M. Abramson, Abrams, Abramson & Tabb, Philadelphia, Pa., for plaintiffs.

Andrew B. Cantor, Wisler, Pearlstine, Talone, Craig & Garrity, Norristown, Pa., for defendant.

## SUR PLEADINGS AND PROOF

LUONGO, Chief Judge.

In this lawsuit, the trustees of the Shopmen Iron Workers Welfare Plan (Welfare Plan) and the trustees of the Shopmen's Local Union No. 502 Pension Plan (Pension Plan) seek interest, liquidated damages and counsel fees against defendant Machined Metals Co., Inc. on account of defendant's alleged failure to make timely contributions to the Plans. The Plans' trustees contend that payments for which defendant became liable during the months of August, 1982 through June, 1983 were not made when required by an applicable collective bargaining agreement. Plaintiffs seek relief under section 306(b)(2) of the Multiemployer Pension Plans Amendments Act, 29 U.S.C. § 1132(g)(2), and section 301 of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 185.

On February 24, 1984, plaintiffs filed a motion for summary judgment, arguing that Machined Metals' admission of several delays in payment entitled the trustees to judgment as a matter of law. After consideration of defendant's response to the motion, I suggested at oral argument that the parties enter into a stipulation concerning the few issues of fact potentially open to dispute. The parties have taken my suggestion, and now, under Fed.R.Civ.P. 52(a), I make the following:

### Findings of Fact

1. Plaintiffs in this action are the trustees of the Shopmen Iron Workers Welfare Plan, and the trustees of the Shopmen's Local Union No. 502 Pension Plan. Plaintiffs are fiduciaries with respect to the Plans, and are authorized to bring this action.[1]

2. Defendant is Machined Metals Co., Inc. Machined Metals is a corporation authorized to do business in Pennsylvania, with its principal place of business in Norristown, Pennsylvania.[2]

3. During the period August, 1982 to June, 1983 Machined Metals was party to a collective bargaining agreement with Shopmen's Local Union No. 502 of the International Association of Bridge, Structural and Ornamental Iron Workers.[3]

4. Under the terms of the collective agreement, Machined Metals was obligated to contribute $.80 (eighty cents) per hour of employment of covered employees to the Welfare Plan.[4]

5. Defendant was required to pay $.68 (sixty-eight cents) per hour of employment of covered employees to the Pension Plan.[5]

---

1. Amended Complaint, ¶¶ 2, 5, 7; Answer to Amended Complaint, ¶¶ 2, 5, 7.

2. Amended Complaint, ¶ 3; Answer to Amended Complaint, ¶ 3.

3. Amended Complaint, ¶ 4; Answer to Amended Complaint, ¶ 4.

4. Id.

5. Amended Complaint, ¶ 9; Answer to Amended Complaint, ¶ 9.

**602**

6. Contributions to the Welfare Plan and the Pension Plan were required to be remitted on the 15th (fifteenth) day of the month following the month in which said sums were accrued.[6]

7. Machined Metals failed to make timely contributions to both the Welfare Plan and the Pension Plan for the months August, 1982 through June, 1983.[7]

8. The following schedule accurately reflects the amount of payments owed by defendant to the Plans, the due dates specified by the collective agreement, and the dates on which payments were actually forwarded:[8]

| Payments Accrued During | Amount Welfare Plan | Pension Plan | Due Date | Date Paid |
|---|---|---|---|---|
| August, 1982 | $4,050.40 | $3,442.84 | 09/15/82 | 11/04/82 |
| September, 1982 | 3,225.00 | 2,741.25 | 10/15/82 | 11/15/82 |
| October, 1982 | 1,761.20 | 1,497.02 | 11/15/82 | 11/24/82 |
| November, 1982 | 1,664.40 | 1,414.74 | 12/15/82 | 01/07/83 |
| December, 1982 | 2,029.80 | 1,725.33 | 01/15/83 | 01/27/83 |
| January, 1983 | 2,640.60 | 2,244.51 | 02/15/83 | 03/23/83 |
| February, 1983 | 2,000.00 | 1,700.00 | 03/15/83 | 04/07/83 |
| March, 1983 | 1,684.60 | 1,431.91 | 04/15/83 | 05/23/83 |
| April, 1983 | 1,611.60 | 1,369.86 | 05/15/83 | 06/27/83 |
| May, 1983 | 1,626.60 | 1,382.61 | 06/15/83 | 08/02/83 |
| June, 1983 | 2,095.20 | 1,780.92 | 07/15/83 | 08/24/83 |

9. The president of defendant Machined Metals attempted to reach a compromise agreement regarding the first three delayed payments.[9]

10. The trustees never assented, however, to the proposed agreement.[10]

11. After the enactment of 29 U.S.C. § 1132(g)(2)(C)(ii), both the Welfare Plan and the Pension Plan were amended to authorize their respective trustees to seek an award of liquidated damages against employers that fail to make timely contributions. The Welfare Plan was amended to provide:

An employer who shall become delinquent in his contributions due to the Board of Trustees shall be liable for:

(i) The amount of the delinquency, plus

(ii) Reasonable attorney's fee in the sum of fifteen percent (15%) of the amount of the delinquency, plus

(iii) Costs incurred in maintaining a suit for collection of the delinquency, plus

(iv) The greater of interest at the then prevailing prime rate or liquidated damages of twenty percent (20%) of the delinquency.[11]

12. The Pension Plan amendment stated:

*Liquidated Damages*

Resolved; that Counsel amended[12] the pension plan to provide for liquidated

6. Collective Bargaining Agreement between Machined Metals Company, Inc. and Shopmen's Local Union No. 502 of the International Association of Bridge, Structural and Ornamental Iron Workers, §§ 14(B), 14(A)(B).

7. *See generally* Defendant's Memorandum Contra Plaintiffs' Motion for Summary Judgment, Exhibits A and D.

8. *Id.*

9. *See* letter from Andrew M. Hepburn to Robert M. Abramson (November 3, 1982).

10. Letter from Frank Bullock to Andrew Hepburn (November 5, 1982).

11. Supplementary Affidavit of George Modell, Minutes of Meeting of Welfare Plan Trustees (September 21, 1981), Exhibit C.

12. A more accurate statement is that counsel's *proposed* amendment was adopted.

damages in collections of delinquencies as provided under the Act.

Delinquent employers shall be liable for:

(i) the amount of the delinquency, plus

(ii) reasonable attorney's fees, plus

(iii) the greater of interest at current rates and 20% of the delinquency e.g. in no instance more than 20% of the delinquency.[13]

13. Counsel for plaintiffs wrote two letters to defendant or its counsel in an effort to collect delinquent payments and additions thereto. In those letters, counsel referred to a collection fee, apparently separate from interest charges, as an amount calculated at a twenty percent (20%) *per annum* rate.[14] The above-quoted amendments to the Plans, however, do not state that liquidated damages should be calculated on a *per annum* basis.

14. Neither Plan specified under section 1132(g)(2) of Title 29 a rate of interest to be charged against delinquent payments. Based on interest rates established pursuant to 26 U.S.C. § 6621, the parties have stipulated that interest shall be calculated at twenty percent (20%) per year for amounts outstanding from August, 1982 through December, 1982, and at sixteen percent (16%) per year for amounts in arrears thereafter.[15]

### Discussion

This case is somewhat unusual in that the parties have no dispute as to the defendant's obligation to make contributions to the Plans, or the amount of those obligations; at issue is the amount of damages resulting from defendant's delay in discharging debts which are now concededly satisfied. Resolution of this issue is governed by section 306(b) of the Multiemployer Pension Plans Amendments Act of 1980, 29 U.S.C. § 1132(g)(2),[16] which states:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

Section 1132(g)(2) provides the measure of recovery because Machined Metals' failure to make timely contributions to the Plans caused the employer to be in violation of

---

**13.** Modell Affidavit, Minutes of Meeting of Pension Fund Trustees (March 31, 1981) at 5.

**14.** Letter from Robert M. Abramson to Andrew B. Cantor (July 19, 1982); Letter from Robert M. Abramson to Andrew M. Hepburn (November 16, 1982). I note that defendant has produced only the first page of Mr. Abramson's letter to Mr. Hepburn.

**15.** Stipulation of Counsel at 2.

**16.** Plaintiffs' complaint also includes a claim for breach of Machined Metals' obligations under the collective bargaining agreement. *See* 29

U.S.C. § 185 (Taft-Hartley Act section 301). I am not persuaded, however, that plaintiffs' § 301 claim provides a basis for calculating damages different from the statutory scheme under 29 U.S.C. § 1132(g)(2). As discussed below, in order to interpret the obscure language of the Plans' amendments—particularly that of the Pension Plan—I find it necessary to construe the Plans as adopting the damages remedy authorized by MPPAA. Conversely, I conclude that remedies provided under the Plans offer no greater basis for recovery than does § 1132(g)(2).

MPPAA § 306(a), 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

■ After careful consideration of the parties' contentions, I conclude that plaintiffs are not entitled to an award of damages under 29 U.S.C. § 1132(g)(2)(A). Defendant made all payments required for the months August, 1982 through May, 1983 before the Plans commenced this suit, and the contribution for June, 1983 was forwarded two days after the filing of plaintiffs' complaint.[17] Thus there are no "unpaid contributions" within the meaning of subparagraph (A).

■ Although there are no unpaid contributions currently outstanding, I conclude that plaintiffs are entitled, under section 1132(g)(2)(B) to an award of interest on delinquent contributions for the amount of time such payments were wrongfully withheld. Section 1132(g)(2) was enacted because of Congress' concern over costs incurred by multiemployer plans, such as lost revenue and collection and litigation expenses, as a result of employer delinquencies. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 87, 102 S.Ct. 851, 861, 70 L.Ed.2d 833. *See also* Senate Committee on Labor and Human Resources, S.1076—The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration, 96th Cong. 2d Sess. 43–44 (Comm.Print, Apr.1980) (1980 Senate Labor Committee Print). To hold an employer completely free from liability because payment was forwarded in advance of litigation would frustrate Congress' remedial purpose.

The following schedule accurately reflects the amounts of payments owed by defendant to the Welfare Plan for the months of August, 1982 to May, 1983, the contractual due dates of those payments, the dates on which those payments were actually made, the number of days payments were delayed,[18] the rate of interest applied, and the amount of interest to be awarded under section 1132(g)(2)(B).

| Month | Due Date | Date Paid | Number of days delayed | Amount | Annual Rate of Interest | Interest Award |
|---|---|---|---|---|---|---|
| Aug., 1982 | 09/15/82 | 11/04/82 | 53 | $4,050.40 | 20% | $ 117.63 |
| Sept., 1982 | 10/15/82 | 11/15/82 | 34 | 3,225.00 | 20% | 60.08 |
| Oct., 1982 | 11/15/82 | 11/24/82 | 12 | 1,761.20 | 20% | 11.58 |
| Nov., 1982 | 12/15/82 | 01/07/83 | 26 | 1,664.40 | 20%* | 21.89 |
| | | | *through Dec. 31, 1982, 16% thereafter | | | |
| Dec., 1982 | 01/15/83 | 01/27/83 | 15 | 2,029.80 | 16% | 13.35 |
| Jan., 1983 | 02/15/83 | 03/23/83 | 39 | 2,640.60 | 16% | 45.14 |
| Feb., 1983 | 03/15/83 | 04/07/83 | 26 | 2,000.00 | 16% | 22.79 |
| Mar., 1983 | 04/15/83 | 05/23/83 | 41 | 1,684.60 | 16% | 30.28 |
| Apr., 1983 | 05/15/83 | 06/27/83 | 46 | 1,611.60 | 16% | 32.50 |
| May, 1983 | 06/15/83 | 08/02/83 | 51 | 1,626.60 | 16% | 36.36 |
| | | | | | Total | $ 391.60 |

The following schedule accurately reflects the amounts of payments owed by defendant to the Pension Plan for the months August, 1982 to May, 1983, the

---

**17.** Defendant's Memorandum Contra Plaintiffs' Motion for Summary Judgment, Exhibit A.

**18.** Because the record establishes only the dates on which payments were sent, I have added three days to the number of days each payment was delayed for the purpose of computing interest. *Cf. Fed.R.Civ.P.* 6(e).

contractual due dates of those payments, the dates on which the payments were actually made, the number of days payments were delayed,[19] the rate of interest applied, and the amount of interest to be awarded to the Pension Plan under section 1132(g)(2)(B).

| Month | Due Date | Date Paid | Number of days delayed | Amount | Annual Rate of Interest | Interest Award |
|---|---|---|---|---|---|---|
| Aug., 1982 | 09/15/82 | 11/04/82 | 53 | $3,442.84 | 20% | $ 99.98 |
| Sept., 1982 | 10/15/82 | 11/15/82 | 34 | 2,741.25 | 20% | 51.07 |
| Oct., 1982 | 11/15/82 | 11/24/82 | 12 | 1,497.02 | 20% | 9.84 |
| Nov., 1982 | 12/15/82 | 01/07/83 | 26 | 1,414.74 | 20%* | 18.60 |
| | | | | *through Dec. 31, 1982, 16% thereafter | | |
| Dec., 1982 | 01/15/83 | 01/27/83 | 15 | 1,725.33 | 16% | 11.34 |
| Jan., 1983 | 02/15/83 | 03/23/83 | 39 | 2,244.51 | 16% | 38.37 |
| Feb., 1983 | 03/15/83 | 04/07/83 | 26 | 1,700.00 | 16% | 19.38 |
| Mar., 1983 | 04/15/83 | 05/23/83 | 41 | 1,431.91 | 16% | 25.74 |
| Apr., 1983 | 05/15/83 | 06/27/83 | 46 | 1,369.86 | 16% | 27.62 |
| May, 1983 | 06/15/83 | 08/02/83 | 51 | 1,382.61 | 16% | 30.91 |
| | | | | | Total | $ 332.85 |

For similar reasons, I conclude that an additional award of interest is warranted under section 1132(g)(2)(C)(i) with respect to payments for the months August, 1982 to May, 1983. In the amendments to ERISA, Congress purposefully mandated a double award of interest against delinquent employers in order to compensate plans for incidental costs caused by delays in payment. The Welfare Plan is therefore entitled to an additional award of $391.60, and the Pension Plan is entitled to an additional award of $332.85.

■ The Plans are not entitled to an award of liquidated damages under section 1132(g)(2)(C)(ii) on payments for the months August, 1982 to May, 1983. Liquidated damages under MPPAA are calculated as "an amount not in excess of 20 percent ... *of the amount determined by the court under subparagraph (A)."* (emphasis added). As noted above, plaintiffs are entitled to no recovery under subparagraph (A).

Moreover, the facts of this case do not warrant extension of MPPAA's penalty clause to delinquencies which were paid before the Plans filed suit. The Plans were not required to bear the additional cost and delay of litigation before receiving the payments at issue. Indeed, one payment was forwarded nine days after its contractual due date. Absent persuasive evidence that Congress intended to mandate awards of up to twenty percent (20%) of the principal amounts of such payments (in addition to interest) in actions in which there is no recovery under subparagraph (A), I conclude that imposition of that sanction is inappropriate on the facts of the instant case. I recognize that a number of recent appellate decisions have emphasized the mandatory character of section 1132(g)(2). *See Gilles v. Burton Construction Company,* 736 F.2d 1142 (7th Cir.1984); *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513 (9th Cir.1984); *Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc.,* 732 F.2d 319 (3d Cir.1984). For example, in *Gilles v. Burton Construction Company, supra,* the Seventh Circuit Court of Appeals stated:

*After suit is filed,* we doubt that employers who are delinquent in their contributions can avoid the mandatory relief provisions of section 1132(g)(2) through the

**19.** *Id.*

device of offering to pay only the over-due contributions. A settlement will re-quire the agreement of the parties on the entire case—not merely part of the case. *See generally Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds v. C.J. Rogers Transportation Co.*, 544 F.Supp. 308 (E.D.Mich.1982) (deciding interest, penal-ties and fees after parties agreed on amount of delinquent contributions).

At 1146, n. 6 (emphasis added). Those decisions, however, do not discuss the ap-plication of section 1132(g)(2) to cases in which an employer makes required pay-ments *before suit is filed.* Although I conclude that liquidated damages should be assessed if the plan's trustees are forced to file suit before the employer forwards pay-ment, *infra* at 13–14, I am not persuaded that section 1132(g)(2)(C)(ii) was intended to require an award of twenty percent (20%) of the principal amounts of payments de-layed for minimal periods of time.

Plaintiffs' recitation of Judge Cohn's careful review of the legislative history of section 1132 in *Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Company*, 522 F.Supp. 919 (E.D.Mich.1981), does not advance the present inquiry. The *Alco Express* opinion did not address the question whether liqui-dated damages are available to multiem-ployer plans when the employer forwards delinquent payments prior to litigation. Significantly, in a subsequent decision, Judge Cohn ruled that an employer that remained current in interest payments on delinquent contributions was not liable for an award of interest under section 1132(g)(2)(C)(i), the "double interest" alter-native to liquidated damages. *Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds v. C.J. Rogers Transportation Co.*, 544 F.Supp. 308 (E.D.Mich.1982). Thus, despite

the broad remedial purpose of section 1132(g)(2), it is apparent that employer ef-forts to make delayed payments prior to litigation can affect the employer's liability under section 1132(g)(2)(C).

■ With respect to the June, 1983 pay-ment, the Plans are entitled to interest under section 1132(g)(2)(B). The Welfare Plan is entitled to interest at sixteen per-cent (16%) for 43 days on the sum of $2,095.20. The interest award in favor of the Welfare Plan is therefore $39.49. The Pension Plan is entitled to interest on the June, 1983 payment at sixteen percent (16%) for 43 days on the sum of $1,780.92. The interest award in favor of the Pension Plan is thus $33.57.

I will also award the Plans liquidated damages in the sum of twenty percent (20%) of the principal amounts of the June, 1983 payments. Machined Metals failed to make those payments until after this suit was filed on August 22, 1983. Although the contributions due for the month of June are not currently unpaid within the meaning of section 1132(g)(2)(A), I conclude that extension of section 1132(g)(2)(C)(ii) to payments forwarded before judgment, but after the institution of suit, would effectu-ate MPPAA's broad remedial purpose.[20] Because an award of liquidated damages on the June, 1983 payments exceeds the amount of interest that would have accrued on those payments under section 1132(g)(2)(C)(i), liquidated damages must be awarded.

The Welfare Plan is entitled to liquidated damages in the amount of twenty percent (20%) of $2,095.20. The award of liqui-dated damages in favor of the Welfare Plan is thus $419.04. The Pension Plan is entitled to liquidated damages in the sum of twenty percent (20%) of $1,780.92. I will therefore award liquidated damages in fa-

---

**20.** Counsel have stipulated that all contributions "due for the period August, 1982 through De-cember, 1982, had been paid by defendant." Stipulation of Counsel at 2. This agreement is somewhat puzzling since the affidavits sub-mitted make it clear that those payments were

made before filing of the complaint. The only payment the timing of which could have been disputed was that for June, 1983. Nevertheless, the affidavits, particularly that of Mr. Colen, establish that the June, 1983 contribution was forwarded after suit was commenced.

vor of the Pension Plan in the amount of $356.18.

█ I reject defendant's argument that liquidated damages should be assessed on a *per annum* basis in this case. Nothing in section 1132(g)(2)(C)(ii) or its history suggests that liquidated damages should be so limited. Neither am I persuaded that the Plans themselves limited the twenty percent (20%) liquidated damages figure to a *per annum* calculation. Even assuming that plaintiffs' counsel's letters construing liquidated damages as an annual charge were admissible to show the validity of defendant's proposed interpretation of the Plans' amendments, I find that the Welfare Plan's plain language requires assessment of liquidated damages against the principal amounts of the delinquencies.

I am also satisfied that the Pension Plan's amendment requires liquidated damages to be charged at twenty percent (20%) of the principal sum due for June, 1983, although somewhat less certainty attends the construction of that amendment. The Pension Plan amendment states:

*Liquidated Damages*

Resolved; that Counsel amended [21] the pension plan to provide for liquidated damages in collections of delinquencies as provided under the Act.

Delinquent employers shall be liable for:

(i) the amount of the delinquency, plus

(ii) reasonable attorney's fees, plus

(iii) *the greater of interest at current rates and 20% of the delinquency e.g. in no instance more than 20% of the delinquency.*

*Supra* at 602–03 (emphasis added). As defendant points out, this provision appears internally inconsistent. The amendment initially specifies that damages be calculated at the greater of interest at current rates and twenty percent (20%) of the delinquency. So stated, the provision is a mirror of the Welfare Plan's amendment, and would normally require damages in the amount of twenty percent (20%) of the de-

linquency unless interest charges, based upon current rates and the length of the delinquency, caused the interest charge to exceed twenty percent (20%) of the amount owed. The last clause of the amendment, however, disrupts this analysis because it states that "in no instance" will the charge exceed twenty percent (20%) of the delinquency. *Id.* Thus, the first clause of the amendment appears to make twenty percent (20%) of the delinquency a minimum amount of damages to be assessed against a delinquent employer, while the second clause establishes it as a maximum. Nevertheless, nothing in the Pension Plan's amendment indicates that the twenty percent (20%) figure was itself intended as a *per annum* rate. Rather, like the Welfare Plan's amendment, this provision is plainly the result of the Trustees' effort to establish a liquidated damages mechanism as authorized by section 1132(g)(2)(C)(ii), and I conclude that, despite its imprecision, the Pension Plan amendment fulfills that purpose.

I also reject defendant's argument that I can—or should—reduce liquidated damages to an amount less than twenty percent (20%) of the June, 1983 delinquencies. In section 1132(g)(2)(C)(ii), Congress plainly authorized multiemployer plans to adopt provisions for liquidated damages in an amount up to twenty percent (20%) of payments wrongfully withheld. Although the trustees certainly have discretion to adopt a rate of damages appropriate for the employers and industries involved with their respective benefit funds, that discretion lies with the trustees, not the district court.

█ Finally, I reject defendant's argument that delinquent payments for the months of August, September, and October of 1982 were the subject of an accord and satisfaction. It is apparent even from defendant's brief claiming discharge from liability for those months that the Plans' trustees never assented to the proposed accord.[22] Machined Metals' argument is thus

---

**21.** *See supra,* n. 12.

**22.** Defendant's brief states:

Three (3) of the months claimed to be delinquent were subject to negotiations and an

reduced to a claim that the Plans absolved it from liability simply because the trustees accepted late payments. That argument is without merit.[23]

### Conclusions of Law

1. Plaintiffs are "fiduciaries" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

2. Defendant is an "employer" in an industry "affecting commerce" under §§ 3(5), (11), (12) of ERISA, 29 U.S.C. § 1002(5), (11), (12), and § 2(2), (6), (7) of the Labor Management Relations Act, 29 U.S.C. § 152(2), (6), (7).

3. The Shopmen Iron Workers Welfare Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

4. Shopmen's Local Union No. 502 Pension Plan is an "employee pension benefit plan" under ERISA § 3(2), 29 U.S.C. § 1002(2).

5. Both Plans are "Multiemployer Plan[s]" within the meaning of MPPAA § 302(a), 29 U.S.C. § 1002(37)(A).

6. I have jurisdiction over this action under 29 U.S.C. § 1132(e)(1). *See Livolsi v. Ram Construction Co., Inc.,* 728 F.2d 600 (3d Cir.1984).

7. The Welfare Plan is entitled to interest in the amount of $822.69, and liquidated damages in the amount of $419.04.

8. The Pension Plan is entitled to interest in the amount of $699.27, and liquidated damages in the amount of $356.18.

### ORDER

This 1st day of August, 1984, it is

ORDERED that judgment is entered in favor of plaintiff trustees of Shopmen Iron Workers Welfare Plan and against defendant in the amount of $1,241.73. It is

FURTHER ORDERED that judgment is entered in favor of plaintiff trustees of Shopmen's Local Union No. 502 Pension Plan and against defendant in the amount of $1,055.45. It is

FURTHER ORDERED that an award of counsel fees will be deferred until submission by plaintiffs' counsel of a request for such fees supported by a declaration of time devoted to this litigation, the manner in which the time was spent, and a proposed hourly rate of compensation.

---

attempted Compromise Agreement. A proposal was made by the President of Defendant for payments by a certain time. Plaintiffs' attorney wrote saying that he would not agree to the compromise. Thereafter, payments were made pursuant to the compromise and it is the Defendant's position that Plaintiffs' acceptance of these payments for the three (3) months in question constituted an accord and satisfaction since Plaintiffs were aware of the controversy still existing between the parties.

**23.** Plaintiffs are entitled to reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D). However, because plaintiffs' counsel has not submitted a declaration of the time he devoted to this litigation, the manner in which his time was spent, and a proposed hourly rate of compensation, I am unable to determine the award at this time. *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 675–678 (3d Cir.1983); *Carpenters Health and Welfare Fund v. Vincent Marconi, Inc.,* C.A. 81–0079 (E.D.Pa. filed April 2, 1984).