**TRUSTEES OF the GLAZIERS LOCAL 963 PENSION, WELFARE, AND APPRENTICE FUNDS**

v.

**WALKER AND LABERGE COMPANY, INC.**

Civ. No. Y–84–4291.

United States District Court, D. Maryland.

Oct. 16, 1985.

Joseph P. Boyle, Rockville, Md., and James R. O'Connell, Rockville, Md., for plaintiff.

James C. Praley, Glen Burnie, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This case was brought by the trustees of the Glazier Local 963 Pension, Welfare, and Apprentice Funds pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1132(g) and 1145, and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff trustees seek payment for any unpaid contributions, interest, liquidated damages, costs, and attorneys' fees from defendant Walker and LaBerge Company because of defendant's failure to make timely contributions to the employee funds.

Plaintiffs contend that the defendant is required, under the terms of the collective bargaining agreement executed by the union and defendant, to make timely contributions to the employee benefit funds in accordance with the terms of the respective trust agreements to which the collective bargaining agreement refers. Plaintiffs also assert that they are entitled, by statute and contract, to liquidated damages, interest, and attorneys' fees for all late contributions to the employee funds.

Defendant concedes that it is required to make timely contributions to the plaintiffs' trust funds under the collective bargaining agreement and that the statutory provisions to which plaintiffs refer are remedial in nature and are intended to relieve pension plans from the burden of collection proceedings by imposing additional sanctions on employers who fail to make their required contributions. (Defendant's Memorandum, p. 2 (citing 29 U.S.C. § 1132(g)). However, defendant contends that there is an important distinction between unpaid contributions and late contributions that are paid prior to the commencement of suit. (Defendant's Memo., p. 2 (citing *Bennett v. Machine Metals Co., Inc.*, 591 F.Supp. 600, 605 (E.D.Pa.1984).

Plaintiff argues that all late contributions are subject to the mandatory provisions of § 1132. Defendant contests this construction of the federal pension laws and contends instead that the sanctions provided for in § 1132 apply only to contributions that remain unpaid at the time suit is commenced for their collection. Defendant argues further that plaintiffs are entitled only to interest on delinquent payments paid prior to suit.

## I. APPLICABLE LAW

Sections 1132 and 1145 of 29 U.S.C. govern the enforcement of employer contributions to employee pension and welfare trust funds. Section 1145 provides in pertinent part:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Section 1132(g)(2) also provides that:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

These provisions of the MPPAA amended ERISA to provide specific remedies for the enforcement of federal pension laws and the collective bargaining and trust agreements executed pursuant to these laws. In commenting on the changes in

ERISA's enforcement provisions, the Senate Committee on Labor and Human Resources noted that:

> Delinquencies of Employers making required contributions are a serious problem for most multi-employer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans. While contributions remain unpaid, the plan loses the benefit of investment income that could have been received and invested on time. Moreover, additional administrative costs are incurred in detecting and collecting delinquencies. Attorneys fees and other legal costs arise in connection with collection efforts.
>
> These costs detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health of plans. Participants and beneficiaries of plans as well as employers who honor their obligation to contribute in a timely fashion bear the heavy cost of delinquencies in the form of lower benefits and higher contribution rates.... The intent of this section is to promote prompt payment of contributions and assist plans in recovering the cost incurred in connection with delinquencies.

Senate Committee on Labor and Human Resources (Staff), 96th Congress, 2d Sess., S. 1076, *The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis Consideration* (Comm.Print (1980) at 43–44).

■ Similar sentiments were expressed in the House on H.R. 3904, which contained identical language as S. 1076 concerning double interest, liquidated damages, costs and attorneys' fees. Representative Thompson stated in a floor debate that:

> It is intended that the specific provisions of this section concerning interest and liquidated damages are not limitations on the amounts otherwise set forth in collective bargaining agreements or plan documents; they constitute a minimum, not a maximum. For example, we understand that there are multiemployer plans which currently provide, in the event of the employer contribution delinquency, for the payment of interest and liqui-

dated damages which are in excess of the provisions of this section. Such practice will not be affected by the provisions of this section which directs a court to award unpaid contributions, interest, liquidated damages which are in excess of the provisions of this section. Such practice will not be affected by the provisions of this section which directs a court to award unpaid contributions, interest, liquidated damages, reasonable attorney's fees, and costs as well as where the plan does not sufficiently address such items.

*Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 928 (E.D.Mich.1981) (quoting 126 Cong.Rec.H. 7899 (daily ed. August 26, 1980)). There can be little doubt that Congress intended to strengthen the enforcement provisions of federal pension law to protect the integrity and insure the continued viability of multiemployer employee benefit plans by relieving the plans of the burden of collection proceedings. *Central States,* 522 F.Supp. at 928. Therefore, § 1132(g)(2) was enacted to provide stiffer sanctions against employers who fail to make contributions to the employee benefit plans specified in the various collective bargaining and trust agreements to which they are parties.

The employee benefit plans which are the subject of this litigation, are established and maintained pursuant to the Trust Agreements and Declarations of Trust incorporated by specific reference in Articles VIII (Apprenticeship), X (Health and Welfare Fund), and XI (Pension Fund) of the collective bargaining agreement executed by the union and employers. These trust agreements govern the operation of the employee plans, the timing of employer contributions to the plans, and the penalties for late payments to the plans. Both the employers and the union have designated representatives as trustees for the various plans.

The trust agreements for the plans involved in this case provide that:

> Insofar as payments by the individual Employer to the Fund are concerned,

time is of the essence. Regular and prompt payment of amounts due by individual Employers to this Fund is essential for the maintenance of the Fund, and it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the program provided by the Fund which will result from the failure of an individual Employer to make such monthly payments in full within the time period. Therefore, payments, together with the completed reporting forms, are due on the tenth (10th) day following the end of each calendar month. Where an Employer is in default for ten (10) working days in filing any report and making any payment due, there may be added to and become a part of the amount due and unpaid, liquidated damages for each monthly report or payment due to the Fund, up to twenty percent (20%) of the amount due or twenty dollars ($20.00), whichever is greater, plus interest at the rate of twelve percent (12%) from the due date until the date of payment. (Exhibits G, H, I).

These agreements are essential to the resolution of plaintiffs' claims in this case.

## II. DISCUSSION

■ Following a hearing on the factual and legal issues involved in this case, the Court concludes that plaintiff is entitled to liquidated damages and interest on late contributions made by the defendant to the respective plans. Plaintiffs are entitled to liquidated damages and interest under the terms of the applicable trust agreements for contributions due for the months of November, 1983, January, March, August, and September, 1984. These late contributions are subject to liquidated damages provided in the trust agreements. The liquidated damages mandated in subparagraph (C)(ii) of § 1132(g)(2) are not applicable to these delinquent contributions because, although they were untimely, they were tendered prior to the commencement of this suit and therefore do not qualify as "un-

paid contributions" from which liquidated damages can be calculated as provided in § 1132(g)(2)(C)(ii). *See Bennett v. Machine Metals Co., Inc.,* 591 F.Supp. 600, 604, 605 (E.D.Pa.1984). Although it is of little practical significance because liquidated damages in this case are the same under the terms of the trust agreements *and* the statutory provisions of § 1132(g)(2)(C)(ii), the mandatory liquidated damage provisions of subparagraph (C)(ii) is applicable to the late contributions for the month of October, 1984 which had not been paid at the time this suit was filed.*

■ Despite defendant's contentions to the contrary, defendant is liable for interest *and* liquidated damages for all contributions paid to the respective employee plans in an untimely manner as mandated by the trust agreements which govern the plans. Defendant is bound to the terms of the collective bargaining agreement to which it is a party and which incorporates the respective trust agreements by reference. Defendant's representatives are included as trustees for the plans and as such are signatories to the trust agreements and any amendments thereto.

■ Defendant is also liable for costs and reasonable attorneys' fees. Section 1132(g)(2) mandates the award of costs and attorneys' fees where a fiduciary successfully brings an action on behalf of an employee plan to enforce § 1145 of Title 29. Section 1145 requires employers who are contractually obligated to make contributions to multiemployer plans under the terms of the plans or collective bargaining agreements, to make such contributions in accordance with the terms and conditions of the plans and collective bargaining agreements. Here, the defendant employer is required to make contributions to the respective employee plans no later than ten (10) days following the end of each calendar month. Defendant has failed to comply with this condition in each of the months for which plaintiffs seek relief. Al-

---

* This action was commenced on November 28, 1984. Because only the contributions for October, 1984 (due on November 11, 1984) had not been received at the time of filing, they are the only contributions to which subparagraph (C)(ii) of § 1132(g)(2) could apply.

though the principal amounts of all contributions except for October, 1984 were paid and received by the plans prior to suit, plaintiffs nonetheless were required to bring this action to collect liquidated damages provided for in the trust agreements for late contributions paid both before and after commencement of this action. Having brought suit to enforce the terms and conditions of the trust agreement with which the defendant is compelled to comply contractually and statutorily, plaintiffs are entitled to costs and attorneys' fees upon the award of judgment in their favor. 29 U.S.C. § 1132(g)(2) *and* § 1132(g)(2)(D).

The statutory damages to which plaintiffs are entitled for the delinquent contributions for October, 1984 are the same as the damages provided in the trust agreements for delinquent contributions. Thus, there is no reason to calculate separately the liquidated damages for October, 1984 and the delinquent contributions from the remaining months which were satisfied in full prior to suit. Plaintiff is entitled to liquidated damages amounting to no more than 20% of the principal amount owed at the due date plus interest at 12% from the due date until the date of payment. These damages and interest apply to the delinquent payments for January, March, August, September, and October, 1984. Plaintiff is also entitled to interest on the late contributions for November, 1983. No liquidated damages are currently owing from that month because they have already been paid by the defendant.

Based on the foregoing discussion, plaintiffs are entitled to liquidated damages for late contributions of the defendant to the employee plans. Judgment for such damages will be entered for plaintiffs in the amount of $6,759.57 and shall be apportioned as follows:

| | | |
|---|---|---|
| (1) | Welfare Fund | $4,416.90 |
| (2) | Pension Fund | $2,232.78 |
| (3) | Apprenticeship Fund | $ 109.89 |
| | | $6,759.57 |

Similarly, plaintiffs are also entitled to interest in the amount of $379.53. Judgment will be entered in favor of the plans in the following amounts:

| | | |
|---|---|---|
| (1) | Welfare Fund | $247.66 |
| (2) | Pension Fund | $125.71 |
| (3) | Apprenticeship Fund | $ 6.16 |
| | | $379.53 |

Judgment will be entered in favor of the Welfare and Pension plans for incorrect computations in January and December, 1984, and May, 1985 in an amount totaling $503.33. Payments should be allocated between the two plans as follows:

| | | |
|---|---|---|
| (1) | Welfare Fund | $236.33 |
| (2) | Pension Fund | $267.00 |
| | | $503.33 |

Thus, plaintiffs are entitled to a total payment of $7,642.43 for liquidated damages, interest, and incorrect computations. Plaintiffs are also entitled to attorneys' fees and costs in the amount of $600.00. Judgment will be entered in favor of plaintiffs for $8,542.43 (total of damages, incorrect computations, interest, costs, and attorneys' fees).