CARPENTERS & JOINERS WELFARE FUND, Twin City Carpenters Pension Fund, Twin City Carpenters Vacation Fund, Twin City Carpenters Apprenticeship Fund and Roger Rehbein, Trustee, Appellants,

v.

GITTLEMAN CORPORATION, a Minnesota business corporation, and Melvin C. Gittleman, individually, Appellees.

No. 87–5412.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1988.

Decided Sept. 20, 1988.

---

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The issue before us is whether the Gittleman Corporation and its President, Melvin G. Gittleman, because of delinquent contributions to several welfare funds of the Carpenters, are required under either its collective bargaining agreement or ERISA to pay liquidated damages. The district court[1] ruled that the Gittlemans should pay three times the interest due on delinquent contributions, but denied liquidated damages. *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, No. 4–86–310, slip op. at 8 (D.Minn. Aug. 10, 1987). The Carpenters and Joiners Welfare Fund, Twin City Carpenters Pension Fund, Vacation Fund, and Apprenticeship Fund, and the Trustee appeal, arguing that both the collective bargaining agreement and ERISA mandate liquidated damages. We affirm.

The several funds are multiemployer employee fringe benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982). The Gittleman Corporation has been a major employer of union carpenters in the Twin City area, and its collective bargaining agreements required it to make monthly contributions to the funds. From January 1984 through June 1985, Gittleman was obligated to contribute approximately $318,000 to the funds, and while it made all of the required contributions before this action was brought, Gittleman was delinquent in making 14 of the 18 required payments by periods ranging between eight days and two months. The funds brought this action claiming liquidated damages of ten percent of the delinquent contributions under both the collective bargaining agreement[2] and 29 U.S.C. § 1132(g)(2) (1982).[3]

David S. Anderson, Minneapolis, Minn., for appellants.

Frank J. Walz, Minneapolis, Minn., for appellees.

1. The Honorable Diana Murphy, United States District Judge for the District of Minnesota.

2. Article 19(B) of the collective bargaining agreement provides:

If an Employer becomes delinquent for a particular work month (as provided in (a) above), he shall also be required to pay, as liquidated damages and not as a penalty, an amount equal to 10% of the payment other-

3. See note 3 on page 478.

The district court granted summary judgment in favor of the plaintiff funds, there being no disputed issue of fact. The district court awarded three times the interest on the delinquent contributions, attorney's fees and costs, but denied the funds' claim for liquidated damages.

Under the district court's reading of section 1132(g)(2), there were no "unpaid contributions" because Gittleman paid the delinquent amounts before suit was brought, and section 1132(g)(2) authorized no liquidated damages according to the reasoning of *Bennett v. Machined Metals Co.*, 591 F.Supp. 600 (E.D.Pa.1984). *Carpenters & Joiners v. Gittleman Corp.*, slip op. at 4–5. The district court further concluded that the funds' claims under the collective bargaining agreement were state law contract claims and therefore preempted by ERISA. Slip op. at 7.

■ On appeal the funds argue that section 1132(g)(2) and the collective bargaining agreement entitle them to recover liquidated damages. First, the funds claim that they are entitled to liquidated damages under section 1132(g)(2). That section was enacted as part of the Multiemployer Pension Plan Amendments Act of 1980 (MPPA), Pub.L. No. 96–364, 94 Stat. 1208, and provides for several types of compensation (including liquidated damages if provided by agreement) keyed to the amount of "unpaid contributions." However, the term "unpaid contributions" has been interpreted to mean contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time

but which were paid up before suit was filed. *See Bennett v. Machined Metals Co.*, 591 F.Supp. at 604–06; *Trustees of Glaziers Local 963 v. Walker and LaBerge Co.*, 619 F.Supp. 1402, 1405 (D.Md.1985). We agree that this is the correct interpretation of the plain language of the statute. Therefore, since there are no "unpaid contributions," the funds are not entitled to liquidated damages under section 1132(g)(2) because the availability of those damages is keyed to the existence of "unpaid contributions." 29 U.S.C. § 1132(g)(2)(C)(ii).

If the funds cannot recover under the statutory authorization of liquidated damages, section 1132(g)(2)(C)(ii), they seek to recover under the provision in their collective bargaining agreement granting them liquidated damages of 10% of the delinquent contribution.

■ The district court interpreted the funds' claim under the collective bargaining agreement to be a state law contract claim, preempted under ERISA, 29 U.S.C. § 1144(a) (1982). *See generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The funds argue that their contract claim under their collective bargaining agreement should be enforced as a matter of federal, not state common law. Nevertheless, their claim is preempted by section 1132(g)(2). To allow the funds to recover liquidated damages outside the statutory framework of section 1132(g)(2), with its 20% limitation, would be to allow funds with no "unpaid contribution" to avoid the strictures of the 20%

wise due for such work month, it being understood and acknowledged by the parties that actual damages are extremely difficult or impossible to ascertain and that the amount so fixed as liquidated damages is reasonable, and it is also understood that the 10% charge is not to be compounded.

**3.** 29 U.S.C. § 1132(g)(2) provides in relevant part:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title [creating statutory obligation to make contributions in accordance with applicable plan or collective bargaining agreement] in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the *unpaid* contributions,
(B) interest on the *unpaid* contributions,
(C) an amount equal to the greater of—
(i) interest on the *unpaid* contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) [i.e., the unpaid contribution],
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

(Emphasis added.)

rule and in some cases to afford them a fuller remedy than that available to funds with "unpaid contributions." Congress cannot have intended such an anomaly.[4] The detail and comprehensiveness of the section 1132(g)(2) remedy supports the conclusion that it was meant to "supplant any remedy that otherwise would be available." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). We are convinced that section 1132(g)(2) is an exclusive remedy. *See also Teamsters Local No. 429 Health and Welfare Fund v. Chain Bike Corp.,* 643 F.Supp. 1337, 1343–44 (E.D.Pa.1986); *but see Trustees of Glaziers Local 963 v. Walker and Laberge Co.,* 619 F.Supp. at 1405.

The funds further argue that the district court's award of interest conflicts with our reading of section 1132(g)(2), but as the Gittlemans do not appeal the award of interest against them, we have no basis for reconsidering this aspect of the district court's judgment.

The judgment of the district court is affirmed.

---

**4.** The funds cite excerpts from the legislative history to the effect that in enacting the MPPA Congress intended to promote prompt payment of contributions. *See* Staff of Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration 43–44 (S. 1076) (Comm.Print 1980). Section 1132(g)(2), as we have interpreted it, serves the goal of promoting prompt payment; however, we are not at liberty to go farther in serving this laudable goal than Congress chose to go in enacting the MPPA. *See generally Board of Governors of the Federal Reserve System v. Dimension Financial Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 688–89, 88 L.Ed.2d 691

(1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.").

The funds also argue that *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), holds that section 1132(g)(2) is not meant to be an exclusive remedy. *Central States* stands for no such proposition—it only holds that the existence of a remedy for contribution delinquencies does not foreclose plans from "seeking to deter such breaches or to discover them early." *Id.* at 580, 105 S.Ct. at 2845.