IDAHO PLUMBERS AND PIPEFITTERS HEALTH AND WELFARE FUND; Idaho Plumbers and Pipefitters Pension Fund; Idaho Plumbers and Pipefitters Apprenticeship and Journeyman's Training Fund and Idaho Plumbers and Pipefitters Savings Trust Fund, Plaintiffs–Appellants, Cross–Appellees,

v.

UNITED MECHANICAL CONTRACTORS, INC., Defendant–Appellee, Cross–Appellant.

Nos. 87–4159, 87–4162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Decided May 9, 1989.

Andrew M. Chasan, Boise, Idaho, for plaintiffs-appellants, cross-appellees.

Wayne V. Meuleman, Boise, Idaho, for defendant-appellee, cross-appellant.

Before WRIGHT, TANG and WIGGINS, Circuit Judges.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

We determine whether a provision of a Multi–Employer Pension Plan imposing liq-

uidated damages for delinquent contributions is void as a penalty.

## FACTS

The plaintiffs are four trust funds. They administer jointly a Master Labor–Management Agreement (MLA) between the Union Contracts Group of APHC of Idaho, Inc. and the Idaho State Pipe Trades Association. The trust funds are the Idaho Plumbers and Pipefitters Pension Fund, the Idaho Plumbers and Pipefitters Health and Welfare Fund, the Idaho Plumbers and Pipefitters Apprenticeship and Journeymen's Training Fund, and the Idaho Plumbers and Pipefitters Savings Trust Fund. The defendant, United Mechanical Contractors, Inc., (UMC) is an employer covered by the MLA collective bargaining agreement.

The MLA authorizes the trustees of the respective funds to establish a schedule of liquidated damages for failure to make timely payments in accordance with the provisions of that agreement. In addition to the MLA, the parties have trust agreements creating the jointly administered funds. Each trust agreement grants authority to the trustees to establish a due date for the contributions. If the trustees must initiate action, the MLA obligates the employer to pay all expenses incurred, including reasonable attorney's fees. The trust agreements also provide that the delinquent employer shall be liable for reasonable attorney's fees and costs incurred in the collection process.

The original trust agreements specifying a schedule of payments and due date have been amended. Under an amendment, liquidated damages apply to remittances and reports postmarked later than the 15th of the month or received later than the 20th of the month. Liquidated damages were originally the larger of $25 or 10% of the amount of contributions owed. An amendment increased them to the greater of $50 or 20%. The amendment also increased the interest rate on delinquent contributions to 12% per year.

Prior to May and June of 1985, UMC had made late payments on occasion. The trust funds took no legal action on these delinquencies.

On June 21, 1985, UMC placed in the mail the report for the month of May, together with a check for the amount of contributions due. The trust office received these on June 24, 1985, four days late. Although $46,612.65 was due, the trust funds accepted a check from UMC exceeding this amount by over $200.

On June 25, 1985, the trust administrator notified UMC that it would impose liquidated damages for the late May contributions. It assessed 20% of the amount due, $9,245.23. In response to a formal demand for the liquidated damages plus interest and attorney's fees, UMC tendered a check for $61.30 representing 12% effective interest over the four-day period of delinquency. The trust funds did not cash the check.

The trust funds brought suit on November 12, 1985, to enforce their contractual rights under the MLA and trust agreements pursuant to § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1982). The trust funds have not asserted any rights under ERISA, including 29 U.S.C. § 1132(g)(2) (1982).

The district court compared the damage claim of over $9,000 with the four-day delinquency and held the liquidated damages provision void as a penalty. In an alternative holding, it held that the trust agreements adopt the damages remedy authorized by ERISA 29 U.S.C. § 1132(g)(2), and offer no greater basis for recovery. It also denied the trust funds request for attorney's fees.

## DISCUSSION

### I. Liquidated Damages

#### A. Waiver of Affirmative Defense

The trust funds sued to enforce the liquidated damages provision and the court held it void as a penalty. The funds now argue that UMC waived the "void as a penalty" defense. Although UMC did not mention the defense in its answer as required, the funds raised no objection, discussed it at trial and offered evidence on actual damages.

We treat issues tried by the express or implied consent of the parties as raised in

the pleadings, even if the parties made no formal amendment. *E.g.,* Fed.R.Civ.P. 15(b); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1522 (9th Cir.1985); *Dale Benz, Inc. Contractors v. American Casualty Co.,* 303 F.2d 80, 84 n. 5 (9th Cir.1962); *Kemart Corp. v. Printing Arts Research Laboratories, Inc.,* 269 F.2d 375, 391 (9th Cir.) (failure to plead defense affirmatively shall not affect the decision of those issues when tried "by express or implied consent of the parties."), *cert. denied,* 361 U.S. 893, 80 S.Ct. 197, 4 L.Ed.2d 151 (1959); *Kollsman v. City of Los Angeles,* 565 F.Supp. 1081, 1088–89 (C.D.Ca.1983), *vacated on other grounds,* 737 F.2d 830 (9th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

■ At trial, UMC and the trust funds addressed whether the provision was void as a penalty. The funds failed to allege prejudice in their ability to respond and we find none. Because they did not argue waiver during the trial nor attempt reconsideration on these grounds, we shall consider the defense.

## B. *ERISA Liquidated Damages Remedy*

The trust funds argue that we should enforce the damages provision because other courts have enforced similar pension plan provisions. Their argument ignores the unique facts of this case. The cases cited by the funds involve 29 U.S.C. § 1132(g)(2)(C)(ii), which is not applicable here.

In 1980 Congress amended the Employment Retirement Income Security Act of 1974 (ERISA) with the Multi-employer Pension Plan Amendments Act (MPPAA). The amendments, which include 29 U.S.C. § 1132(g)(2) [after codification], provide a statutory remedy for a trust fund fiduciary suing to collect unpaid plan contributions.[1]

■ Subsection 1132(g)(2)(C)(ii) is the liquidated damages provision. It applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages. *See Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476, 478 (8th Cir.1988) (requiring "unpaid contributions" at the time suit is filed); *Teamsters Local No. 429 Health and Welfare Fund v. Chain Bike Corp.,* 643 F.Supp. 1337, 1343–44 (E.D.Pa.1986) (requiring liquidated damages provision in the plan); *Trustees of the Glaziers Local 963 Pension, Welfare & Apprentice Funds v. Walker & Laberge Co.,* 619 F.Supp. 1402, 1405 (D.Md.1985); *Bennett v. Machined Metals Co.,* 591 F.Supp. 600, 605–06 (E.D.Pa.1984) (requiring award of unpaid contributions). Once the provision applies, liquidated damages are mandatory. *E.g., Operating Engineers Pension Trust v. A–C Co.,* 859 F.2d 1336, 1342 (9th Cir.1988); *see Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 514 (9th Cir.1984).

Because no contributions were "unpaid" at the time of this suit, § 1132(g)(2) does not apply. In contrast, the provision at issue provides for liquidated damages when contributions are late rather than unpaid.[2]

1. 29 U.S.C. § 1132(g)(2) (1982) states: "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title *in which a judgment in favor of the plan is awarded,* the court shall award the plan —(A) *the unpaid contributions,* (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) *liquidated damages provided for under the plan* in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of *the amount determined by the court under subparagraph (A),* (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." (emphasis supplied).

   29 U.S.C. § 1145 (1982) states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

2. The trustees modified the original provision with a motion specifying:

   ... [H]enceforth liquidated damages would be imposed upon employers whose remittances and reports were postmarked by a U.S. Post Office later than the 15th of the month

The trust funds cite only inapplicable cases where unpaid contributions existed at the time of suit or even after judgment. *See, e.g., Operating Engineers Pension Trust v. A–C Co.,* 859 F.2d at 1342; *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 854 F.2d 1074, 1080 (7th Cir.1988), *vacated on other grounds,* 864 F.2d 561 (7th Cir.1989), *rehearing en banc,* 870 F.2d 1148 (7th Cir.1989); *Vernau v. Bowen Enter., Inc.,* 648 F.Supp. 721, 724–25 (W.D.Pa. 1986); *LaJiness v. Reactor Controls, Inc.,* 642 F.Supp. 27, 32 (E.D.Mich.1985); *Thelin v. Mitchell,* 576 F.Supp. 1404, 1408–09 (N.D.Ill.1983). Here, UMC paid the contributions before suit was filed.

### C. *Enforceability of the MLA Provision*

The parties disagree about the effect of the MPPAA on prior federal substantive law. The trust funds argue that § 1132(g)(2) did not change the common law regarding contractual remedies, such as liquidated damages, and that the court misapplied that law by holding the provision void as a penalty. UMC argues that § 1132(g)(2) provides the only basis to recover liquidated damages for delinquent contributions. This amounts to an argument that § 1132(g)(2) preempts alternative contractual remedies formerly available under federal common law. UMC argues that if the MPPAA does not preempt alternative remedies, then the court correctly held the provision void.

We must consider whether § 1132(g)(2) preempts contractual remedies available before the MPPAA. The language of § 1132(g)(2)[3] does not necessarily suggest that Congress intended it to provide the only basis for recovering liquidated damages. We nonetheless investigate legislative history to resolve ambiguities about the effect of § 1132(g)(2) on the common law of liquidated damages. *See, e.g., Escobar Ruiz v. INS,* 838 F.2d 1020, 1023 (9th Cir.1988) (en banc). This seems particularly important because we have uncovered only three cases reported after the MPPAA with analogous facts and each applies a different approach. *See Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476 (8th Cir.1988); *Trustees of The Glaziers Local 963 Pension, Welfare & Apprentice Funds v. Walker & Laberge Co.,* 619 F.Supp. 1402 (D.Md.1985); *Bennett v. Machined Metals Co.,* 591 F.Supp. 600 (E.D.Pa.1984).[4] *Bennett* does not apply because the plan provision at issue provided for liquidated damages as under the Act. *See id.* at 602–03.

By contrast with *Bennett, Carpenters* and *Glaziers* reach different results regarding whether § 1132(g)(2) of ERISA preempts alternative contractual remedies for delinquent employer contributions. The Fifth Circuit in *Carpenters* denied liquidated damages under a collective bargaining agreement stating that "[t]he detail and comprehensiveness of the section 1132(g)(2) remedy supports the conclusion that it was meant to 'supplant any remedy that otherwise would be available.'" 857 F.2d at 479. The court did not discuss legislative history. In *Glaziers,* the court awarded liquidated damages under the collective bargaining agreement without considering the possibility of preemption. *See* 619 F.Supp. at 1405.

We conclude that federal common law principles apply to determine the enforceability of the MLA liquidated damages provision. The legislative history indicates that § 1132(g)(2) does not preempt alternative contractual remedies. A House Committee Report commenting on H.R. 3904 (the House version of the bill) states:

> The Committees [sic] amendment provides that in the case of a civil action by any person to collect delinquent multiemployer plan contributions, *regardless of applicable law,* the court before which the action is brought may award the

---

following employment *or* received later than the 20th of the month. (emphasis in original)....

**3.** For text of this subsection, *see supra* n. 1.

**4.** None of these cases addresses whether a plan provision assessing liquidated damages might be void as a penalty.

plaintiff (1) reasonable attorneys fees, (2) court costs, and (3) liquidated damages not to exceed 20 percent of the amount of delinquent contributions as determined by the court ... *The bill preempts any State or other law which would prevent the award of reasonable attorneys fees, court costs or liquidated damages or which would limit liquidated damages to an amount below the 20 percent level.* However, the bill does not preclude the award of liquidated damages in excess of the 20% level where an award of such a higher level of liquidated damages is permitted under applicable State or other law. *The Committee amendment does not change any other type of remedy permitted under State or Federal law with respect to delinquent multi-employer plan contributions.* (emphasis supplied).

H.R.Rep. No. 869, 96 Cong., 2d Sess. (1980) (Part II), *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 3037–38. *See also* 126 Cong.Rec. H7899 (daily ed. Aug. 16, 1980) (statement of Representative Thompson) *discussed in Central States Southeast and Southwest Areas Pension Fund v. Alco Express Co.*, 522 F.Supp. 919, 928 (E.D.Mich.1981).[5] This history indicates that Congress intended only to preempt laws limiting liquidated damages to an amount below the 20% level *when the terms of § 1132(g)(2) are satisfied.*[6]

Having determined that the MPPAA does not preempt the federal common law of liquidated damages when § 1132(g)(2) does not apply, we resolve whether the liquidated damages provision at issue is

void as a penalty. Before the MPPAA, several courts applied federal common law to pension plan liquidated damages provisions to determine whether they were penalties. *See United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331, 337 (7th Cir.1975) (holding 10% liquidated damages provision enforceable and not a penalty even though it failed to make damages proportional to length of delay); *Hammond v. James W. Griffin Co.*, 520 F.Supp. 162, 167–68 (N.D.Ga.1981) (holding 10% interest provision not void as a penalty, but denying interest *and* liquidated damages); *Plumbers Local Union No. 519 v. Service Plumbing Co.*, 401 F.Supp. 1008, 1014 (S.D.Fla.1975) (holding provision valid); *Jensen v. Garvison*, 274 F.Supp. 866, 870 (D.Or.1967) (holding liquidated damages provision reasonable).

■ Applying federal common law, we find that the court held correctly the liquidated damages provision void as a penalty. Such a provision must meet two conditions for enforceability. *Thorleif*, 519 F.2d at 332 (quoting § 339 of Second Restatement of Contracts). First, the harm caused by a breach must be very difficult or impossible to estimate. *Id.* Second, the amount fixed must be a reasonable forecast of just compensation for the harm caused. *Id.* The parties' intentions determine whether this second requirement is satisfied. *Id.* They must make a good faith attempt to set an amount equivalent to the damages they anticipate. *Id.* at 333.

**5.** Several cases provide a useful discussion of the legislative history of § 1132(g)(2). *See Laborers, Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); *Central States v. Gerber Truck Serv.*, 870 F.2d 1148 (7th Cir.1989); *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170 (5th Cir.1985); *Laborers Fringe Benefit Funds v. Northwest Concrete & Constr., Inc.*, 640 F.2d 1350 (6th Cir.1981); *Central States*, 522 F.Supp. 919 (giving the most extensive discussion).

**6.** Although *I.A.M. Nat'l Pension Fund Benefit Plan A v. Monal Mfg. Co.*, 607 F.Supp. 512, 513–14 (D.D.C.1985), *vacated on other grounds*,

1987 WL 12796 (D.D.C. June 10, 1987), does not apply to these facts, the court concluded that the phrase "such higher percentage as may be permitted under Federal or State law," *see supra* n. 1, does not refer to the common law regarding liquidated damages.

Even so, the court stated:
The import of [the] discussion [in the legislative history] is that Congress intended to supersede *any state law or other federal laws* which might be designed or construed to limit a penalty for failure to make timely contributions to a multiemployer pension plan to an amount *below twenty percent of unpaid contributions...* (emphasis supplied).
*Id.* at 514.

Where the damages stipulated are unreasonable, a court will refuse to enforce the agreement on public policy grounds. *Id.; compare Doolan v. Doolan Steel Corp.*, 591 F.Supp. 1506, 1510–11 (E.D.Pa.1984) (damages clause assessing 60% of the total amount of profit sharing benefits due void as a penalty), *aff'd*, 772 F.2d 894 (3d Cir. 1985), *with Thorleif*, 519 F.2d at 337 (10% of amount due enforceable).

The agreement in question provides for liquidated damages of 20%, or $9,245.23 in this instance. UMC paid the contributions four days late. Even taking account of lost investment interest and increased administrative costs, these damages are not a reasonable forecast of just compensation. The trust funds provide no explanation for the increase from 10% to 20%. They do not suggest that it corresponded to an increase in administrative or other costs. The trustees had the opportunity and authority to establish a schedule of damages, but failed to do so. The provision was not a good faith attempt to estimate the amount of damages flowing from the breach.

## II. *Attorney's Fees*

### A. *Mandatory Fees*

■ The trust funds are not entitled to mandatory attorney's fees. Section 1132(g)(2) requires a judgment in favor of the plan before fees become mandatory. *See, e.g., Carpenters Amended*, 767 F.2d at 1173; *Glaziers*, 619 F.Supp. at 1405. Because UMC tendered the interest owed prior to suit, the trust funds did not obtain a judgment in favor of the plan. *See Central States Southeast and Southwest Areas Pension v. C.J. Rogers Transp. Co.*, 544 F.Supp. 308, 313–14 (E.D.Mich.1982) ("interest on unpaid contributions" means interest owing on date judgment is entered).

■ The trust funds attempt also to rely on the MLA. It provides for fees incurred in the collection process.[7] Since UMC owed nothing, this provision does not apply.

### B. *Discretionary Fees*

■ The court in its discretion may award fees to the prevailing defendant under § 1132(g)(1). *Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1414–15 (9th Cir.1984). Here, the court denied fees to both parties. UMC urges remand because the court failed to state its reasons for the denial.

We affirm the denial of fees. In *Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1341 (9th Cir. 1988), this court affirmed a denial of fees to the prevailing defendant under § 1132(g)(1) because the district court found the defendant "not legally liable ... [, but] factually culpable." UMC frequently paid its contributions late. Although UMC did not violate § 1132(g)(2) and the MLA liquidated damages provision was unenforceable, it would undermine the Congressional purpose of encouraging timely payment to award fees after this behavior. *Cf. Russell*, 726 F.2d at 1416 (plaintiff-trustee more likely to recover fees than defendant-employer).

We decline to remand. *See, e.g., Paddack v. Morris*, 783 F.2d 844, 847 (9th Cir.1986) (affirming without remand because reasons for award apparent from record). UMC's continual late payments provide a basis for the denial.

We also deny fees on appeal. *See Russell*, 726 F.2d at 1417.

The judgment is AFFIRMED.

---

7. The provision states:
   "[I]n the event the Trustees place the account in the hands of legal counsel for collection, the delinquent employer shall be liable for reasonable attorney fees, (with a minimum of $25.00) and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc."