104 F.3d 253
 96 Cal. Daily Op. Serv. 9459, 96 Daily Journal
D.A.R. 15,561,
Pens. Plan Guide (CCH) P 23934H
NORTHWEST ADMINISTRATORS, INC., Plaintiff-Appellee-Cross-Appellant,
v.
ALBERTSON'S, INC., Defendant-Appellant-Cross-Appellee.
 Nos. 95-35117, 95-35132.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1996.
Decided Dec. 27, 1996.
 
 Richard R. Carney and Linda J. Larkin, Carney, Buckley, Kasameyer & Hays, Portland, OR, for plaintiff-appellee-cross-appellant.
 Corbett Gordon and Heidi Guettler, Corbett Gordon & Associates, Portland, OR, and also on the opening brief, Kathleen A. McKeon, Gordon, McKeon & Rives, Portland, OR, for defendant-appellant-cross-appellee.
 Appeals from the United States District Court for the District of Oregon, Malcolm F. Marsh, District Judge, Presiding. D.C. No. CV-93-01038-MFM.
 Before: PREGERSON, BOOCHEVER, and T. G. NELSON, Circuit Judges.
 OPINION
 PREGERSON, Circuit Judge:
 
 
 1
 Northwest Administrators, Inc. (the "administrator") filed this action to recover pension contributions from Albertson's, Inc. ("Albertsons") pursuant to a collective bargaining agreement ("CBA") between Albertsons and International Brotherhood of Teamsters (the "union"). The district court held that Albertsons was required to make pension contributions for overtime pay but not for stop pay for long haul mileage truck drivers.[1]
 
 
 2
 The district court also awarded the administrator liquidated damages and attorney's fees under 29 U.S.C. § 1132(g)(2) for its overtime claim. However, the district court denied the administrator's request for liquidated damages and attorney's fees on delinquent contributions, discovered during the litigation, which were owed to long haul mileage drivers and voluntarily paid by Albertsons. Both sides cross-appeal the district court's orders on summary judgment. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.
 
 I. FACTS
 
 3
 Albertsons and the union are parties to a CBA covering warehouse and driver employees for Albertsons' Portland Distribution Center. The CBA requires Albertsons to make pension contributions for its employees to the Western Conference of Teamsters Pension Fund (the "trust"), a multi-employer pension benefit plan established pursuant to ERISA, 29 U.S.C. § 1002(2).
 
 
 4
 The administrator filed this action to recover delinquent pension contributions discovered through an audit covering the period from December 1990 through May 1992. The administrator sought pension contributions on: (1) hours 9 and 10 for warehouse employees regularly working 10-hour shifts, four days a week; (2) overtime for all employees working up to the monthly maximum of 173 hours per month; and (3) stop pay for long haul mileage drivers. In response to the administrator's action, Albertsons agreed to pay the pension contributions for the warehouse employees that worked four 10-hour days. However, Albertsons contested whether it owed pension contributions for overtime for all employees and stop pay for long haul mileage drivers.
 
 
 5
 The parties filed cross-motions for summary judgment. The district court granted partial summary judgment in favor of the administrator on the overtime claim. The district court granted partial summary judgment in favor of Albertsons on the stop pay claim. The district court also awarded the administrator liquidated damages and attorneys fees for prevailing on the overtime and the four 10-hour-day claims.
 
 
 6
 During the litigation, and after the district court's decision on the parties' cross-motions for summary judgment, the administrator discovered through an audit that Albertsons' pension contributions for long haul mileage drivers were deficient by $8,039.51. Although Albertsons promptly paid the deficiency, the administrator requested liquidated damages and attorneys fees on this item. The district court denied the administrator's request.
 
 
 7
 Albertsons appeals the district court's grant of partial summary judgment in favor of the administrator on the overtime claim. The administrator appeals the district court's grant of partial summary judgment in favor of Albertsons on the stop pay claim, and the denial of the administrator's request for liquidated damages and attorney's fees for the delinquent contributions discovered during litigation.
 
 II. ANALYSIS
 
 8
 We review a district court's grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 A. Overtime
 
 9
 We affirm the district court's ruling that under the CBA, Albertsons was required to make pension contributions for overtime pay up to a maximum of 173 hours.
 
 Article 13.1 of the CBA provides:
 
 10
 Effective October 1, 1988 the employer shall pay into the Western Conference of Teamsters Pension Trust on account of each member of the bargaining unit for each compensable hour the following amounts which are to be computed monthly:
 
 
 11
 (a) Twenty-eight cents ($0.28) per compensable hour per employee who works less than 8 hours in a day.
 
 
 12
 (b) Two dollars and twenty-four cents ($2.24) per day per employee who works 8 hours in a day, but not a full week or a full month.
 
 
 13
 (c) Eleven dollars and twenty cents ($11.20) per employee who works a full week or more, but less than a full month.
 
 
 14
 (d) Forty eight dollars and forty-four cents ($48.44) per month per employee who works a full calendar month.
 
 
 15
 CBA, Article 13.1 (emphasis added).
 
 
 16
 Under a plain reading of Article 13.1, Albertsons is required to make pension contributions for each "compensable hour." Article 13.1 makes no distinction between "straight-time" or overtime; nor does it exclude overtime.[2] In these circumstances, we agree with the district court that "[t]he parties' use of the term 'compensable hour' is broad enough to include all forms of paid hourly compensation including straight-time, overtime, paid vacation and paid sick leave."
 
 
 17
 However, Albertsons contends that the parties intended to exclude overtime for the sole purpose of calculating pension contributions under Article 13.1. Albertsons claims that the bargaining history indicates that the parties intended to exclude overtime as "compensable hours" for calculating pension contributions.
 
 
 18
 During the 1988 contract negotiations, the union proposed the following provision which Albertsons rejected:
 
 
 19
 10.2 If an employee works or is compensated for less than a full month's pay and his accumulation of hours, both straight-time and overtime hours exceeds 173 hours in that calendar month, the Employer shall make the appropriate monthly contributions.
 
 
 20
 As noted by the district court, Albertsons' rejection of this provision only shows that Albertsons wanted to maintain the monthly cap of a "full calendar month" for calculating pension contributions.[3] The record contains no evidence that Albertsons rejected the proposed provision because it included overtime in the calculation of hours accumulated. Rather, the evidence shows that the negotiations focused on the pension contribution rates under Article 13.1 because the rates were far below prevailing industry levels.
 
 
 21
 Had Albertsons wanted to limit its pension contributions only to "straight-time" it could have explicitly excluded overtime from the ambit of "compensable hour" or used the term "straight-time" instead of "compensable hour" under Article 13.1. Because Albertsons did not do so, we conclude that "compensable hour" includes overtime and Albertsons was required to make pension contributions for overtime pay.
 
 B. Stop Pay
 
 22
 The district court held that Albertsons was not required to make pension contributions on stop pay for long haul mileage drivers. The district court based its ruling on the bargaining history of the parties and a letter of understanding ("LOU") signed by the parties after they negotiated the CBA. However, because the district court failed to consider evidence of industry practice, we reverse its ruling on this issue.
 
 
 23
 It is undisputed that neither the CBA nor the LOU mentions pension contributions for long haul mileage drivers on stop pay. Albertsons did submit declarations from its negotiators stating that Albertsons never intended to make pension contributions on stop pay, and that the number of miles equaling one compensable hour was lowered specifically to take into account the long haul mileage drivers' stop pay. However, Albertsons' negotiators never communicated their intentions to the union's negotiators, nor did they state their intentions in writing.
 
 
 24
 The district court nevertheless concluded that, because there was no LOU for stop pay, Albertsons was only required to make pension contributions for mileage traveled and not for stop pay. We believe the district court erred in resolving the stop pay claim on summary judgment.
 
 
 25
 As the district court found, "[t]he plain language of the CBA requires pension contributions on 'compensable hours.' " Stop pay is compensation for hours worked. Therefore, we see no reason why stop pay should be excluded in calculating pension contributions under Article 13.1. In fact, evidence from the administrator suggests that industry practice requires employers to make pension contributions on all compensation for long haul mileage drivers, including stop pay. Donald Ditter, the Trust's manager, testified in his deposition about the industry practice formula adopted by the Trust's auditors to compute the number of compensable hours worked by long haul mileage drivers. At his deposition, Ditter also produced a document describing the industry practice for computing compensable hours for long haul mileage drivers.
 
 
 26
 The district court should have looked to industry practice to determine the amount of pension contributions required in this case. "A collective bargaining agreement is not governed by the same principles of interpretation applicable to private contracts." Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1352 (9th Cir.1990). Unlike private contracts, a collective bargaining agreement is
 
 
 27
 a generalized code to govern a myriad of cases and parties, [that] calls into being a new common law of a particular industry or plant, and cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements.
 
 
 28
 Id. (citing Transportation-Communication Employees Union v. Union Pac. R.R., 385 U.S. 157, 160-61, 87 S.Ct. 369, 371-72, 17 L.Ed.2d 264 (1966)). See also United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580-81, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) ("Gaps [in collective bargaining agreements] may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.").
 
 
 29
 The evidence submitted by the administrator has created a genuine issue of material fact concerning the amount of pension contributions for stop pay. Therefore, we reverse the district court's grant of summary judgment on the stop pay claim.
 
 C. Liquidated Damages and Attorney's Fees
 
 30
 The administrator requested liquidated damages and attorney's fees under 29 U.S.C. § 1132(g)(2) for the delinquent contributions discovered during the litigation for long haul mileage drivers. The district court denied the administrator's request because the issue of delinquent contributions was beyond the scope of the administrator's complaint.[4] We believe the district court erred in denying the administrator's request for liquidated damages and attorney's fees.
 
 
 31
 Section 1132(g)(2) provides that in an action to recover delinquent contributions
 
 
 32
 in which a judgment in favor of the plan is awarded, the court shall award the plan--
 
 
 33
 (A) the unpaid contributions,
 
 
 34
 (B) interest on the unpaid contributions,
 
 
 35
 (C) an amount equal to the greater of--
 
 
 36
 (i) interest on the unpaid contributions, or
 
 
 37
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 
 
 38
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
 
 
 39
 (E) such other legal or equitable relief as the court deems appropriate.
 
 
 40
 29 U.S.C. § 1132(g)(2) (West 1985) (emphasis added).
 
 
 41
 Section 1132(g)(2) is "mandatory and not discretionary." Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying, Co., 746 F.2d 557, 569 (9th Cir.1984) (citations omitted). To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc., 875 F.2d 212, 215 (9th Cir.1989) (stating that § 1132(g)(2)(C)(ii) "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages") (emphasis in original).
 
 
 42
 In this case, the administrator has satisfied the three requirements for a mandatory award under § 1132(g)(2). First, a delinquency existed when the administrator filed this action. Second, the district court entered a judgment in favor of the administrator in the amount of $60,037.60, which included $42,821.62 in delinquent contributions. Third, the CBA authorizes an award of interest and liquidated damages under Article IV, Section 3(a)(10), "from the date on which the Employer Contributions become due and payable ... until the date the employer contributions are paid to the Trust Fund."
 
 
 43
 Albertsons contends that a mandatory award under § 1132(g)(2) is improper because it voluntarily paid the delinquent contributions for long haul mileage drivers, thus the district court did not enter judgment against Albertsons relating to those contributions. We reject Albertsons' claim because "[f]ees may be awarded even though there is no judgment on the merits or when the dispute has become moot because relief is otherwise obtained." Lads Trucking Co. v. Board of Trustees of W. Conference of Teamsters Pension Trust Fund, 777 F.2d 1371, 1375 (9th Cir.1985). Thus, mandatory fees are available under § 1132(g)(2) "notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves." Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co., 767 F.2d 1170, 1175 (5th Cir.1985) (rejecting claim that a judgment for unpaid contributions themselves is a condition precedent to obtaining attorney's fees against a delinquent employer when judgment has otherwise been granted in favor of the plan).
 
 
 44
 Because the administrator has satisfied the requirements for a mandatory award, we reverse the district court and hold that the administrator is entitled to liquidated damages and attorney's fees under § 1132(g)(2) for the delinquent amount discovered after the administrator filed this action. On remand, the district court should determine the appropriate award.
 
 D. Attorney's Fees on Appeal
 
 45
 The administrator also seeks attorney's fees on appeal under 29 U.S.C. § 1132(g)(2). We have held that § 1132(g)(2) applies to attorney's fees on appeal. B & E Backhoe, 911 F.2d at 1356. The request is hereby referred to the Appellate Commissioner for entry of an order fixing the amount of the fee award. Costs to Cross-Appellant Northwest Administrators, Inc.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings in accordance with the views expressed herein.
 
 
 
 [1]
 "Stop pay" refers to compensation for the time long haul mileage drivers spend loading and unloading trucks
 
 
 [2]
 Albertsons concedes that for other provisions of the CBA, "compensable hour" includes both "straight-time" and overtime
 
 
 [3]
 The parties agree that subsection (d) under Article 13.1 establishes a cap on pension contributions for the "full calendar month" of 173 hours
 
 
 [4]
 The complaint does not limit the administrator's recovery to stop pay for long haul mileage drivers. The complaint simply alleges: "Proper payments were not made on all compensable hours for all employees working under the written collective bargaining agreement for the period of December, 1990 hours through May, 1992 hours. The total missed payments were in the estimated sum of $60,695.01." (Emphasis added)