**BOARD OF TRUSTEES,**
et al., Plaintiffs,

v.

**Joseph UDOVCH, et al., Defendants.**

**No. C 89 329 TEH.**

United States District Court,
N.D. California.

Sept. 5, 1991.

Michael J. Carroll of Erskine & Tulley, San Francisco, Cal., for plaintiffs.

Stephen Thomas Davenport of Finkle, Davenport & Barsamian, Walnut Creek, Cal., for defendants.

## OPINION AND ORDER DIRECTING ENTRY OF SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

WAYNE D. BRAZIL, United States Magistrate Judge.

### INTRODUCTION

Plaintiffs are the board of trustees of fringe benefit trust funds for the Sheet Metal Workers Local Union No. 104 (Trust Funds). Defendant employers Udovch, doing business as Oceanside Sheet Metal, are bound by a collective bargaining and various trust agreements to make timely con- tributions to plaintiff trust funds for sheet metal work performed by Oceanside em- ployees.

On September 1, 1989, plaintiffs brought this action in federal court alleging that defendant employers failed to make contri- butions to the Trust Funds in accordance with their obligations under the agree- ments, in violation of the section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145, and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs alleged that defendant paid some contributions late and failed altogether to pay other contribu- tions due under the agreements. In addi- tion to the delinquent contributions, plain- tiffs sought liquidated damages under both the collective bargaining agreements and § 502 of ERISA, as amended by the Mul- tiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. § 1132(g)(2).

On March 12, 1990 the parties consented to the jurisdiction of this court for final disposition of the matter. On April 10, 1991 plaintiffs moved for summary judg- ment on the grounds that there were no triable issues of fact or disputes of law. On July 17, 1991, this court held a hearing on plaintiffs' motion and the parties' sub- missions. After identifying a number of issues ripe for settlement, the court or- dered the parties to pursue further settle- ment possibilities before taking the motion for summary judgment under submission.

After discussing settlement further, the parties informed the court that they had resolved all factual issues and asked the court to rule on the question of defendant's liability for liquidated damages under ERISA and/or the applicable trust agree- ments. We now so rule.

### FACTS

Defendant Oceanside Sheet Metal en- tered a collective bargaining agreement with Sheet Metal Workers International Association, Local Union No. 104 for a three year period beginning July 1, 1986. Oceanside entered a similar three-year agreement with substantially identical fringe benefit contribution provisions be-

ginning July 1, 1989. Both contracts incorporate various trust agreements governing employer contributions to the fringe benefit trust funds managed by plaintiffs. The collective bargaining agreements require Oceanside to make contributions to the trust funds, at rates provided in the trust agreements, by the 20th day of each month for wages earned the previous month.

The collective bargaining and trust agreements also provide for liquidated damages in the event that defendant does not pay contributions according to schedule. The Agreement and Declaration of Trust for the Pension Trust provides that liquidated damages equal to $20 per delinquency or ten percent (10%) of the delinquent amount become due at the end of the month in which a delinquency occurs. The Health & Welfare and the other trust agreements contain the same provisions.

In the event of multiple delinquencies, an amendment to the Pension and to the Health & Welfare trust agreements permits the trustees to increase liquidated damages to the highest rate permitted under 29 U.S.C. § 1132(g)(2)(C)(ii). Under collection procedures adopted by the trustees pursuant to the amendment, an initial delinquency is referred to a collection attorney on the 20th day of Month 2 (the month following the month in which the contributions are due). Upon the referral of the account to an attorney, liquidated damages become 20%—the highest rate permitted under § 1132(g)(2)(C)(ii)—for all outstanding delinquencies and for any contributions which later become delinquent before the account is made current. Liquidated damages for the other trusts remain at 10% in the event of multiple delinquencies.

In addition to liquidated damages, the trust agreements provide for recovery of reasonable attorneys' fees, interest, audit fees, court costs, and other reasonable expenses in the event the trust institutes legal proceedings to collect delinquent contributions or other sums owed.

Plaintiffs' original suit sought to collect two categories of damages. First, plaintiffs sought the principal amounts, plus interest, of allegedly unpaid contributions categorized as "Shortages," "The Audit," and "Unreported Months." Second, plaintiffs sought to collect liquidated damages both for the allegedly unpaid contributions and for other contributions which had been paid late.

The parties have since agreed to a settlement of their disputes relating to the principal amounts and interest due as shortages, under the audit, or as unreported months. Moreover, defendants concede that plaintiffs are entitled to liquidated damages at the statutory rate (which is 20% in this setting) with respect to contributions that were both delinquent and unpaid at the time plaintiffs filed this lawsuit. Thus the only issues remaining relate to defendants' alleged liability for liquidated damages with respect to other contributions that were not timely made.

## DISCUSSION

### I. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c) when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. After plaintiffs moved this court for summary judgment, the parties entered settlement negotiations that have eliminated from this litigation all factual disputes as to the principal amounts of the monthly contributions that were due under the applicable trust agreements. For reasons we set forth in greater detail in subsequent sections, we have concluded that there remain no material factual issues as to which genuine disputes exist. Thus, the only material issues that remain are legal: whether, as a matter of statutory construction or contract interpretation, plaintiffs are entitled to liquidated damages for certain delinquent contributions, and, if so, at what rate.

### II. Claims for Liquidated Damages

Sections 1145 and 1132 of 29 U.S.C. are the *statutory* sources of employers' duties to make timely contributions to fringe benefit trust funds regulated by ERISA. Section 1145 provides:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

When a benefit plan wins a judgment in an action to enforce § 1145, § 1132(g)(2) provides that the plan is entitled to:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan not in excess of 20 percent (or such higher percentage as may be permitted under federal or state law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

■ The liquidated damages provided for in § 1132(g)(2)(C)(ii) are *mandatory* when (1) there is a judgment in favor of the benefit plan, (2) contributions remain unpaid at the time the suit is filed, and (3) liquidated damages are provided for in the benefit plan. *Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir.1989); *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1342 (9th Cir.1988). In situations not expressly governed by § 1132(g)(2), however, a plaintiff may seek liquidated damages under applicable contractual provisions. *Idaho Plumbers* at 217.

In order to determine whether plaintiff trust funds are entitled to liquidated damages on the admitted delinquencies in this case, it is useful to categorize the delinquencies on the basis of when the contributions became delinquent and when (or whether) the delinquencies were paid. Some of the contributions for which plaintiff seeks to assess liquidated damages became delinquent and were paid before this suit was filed. Others became due before the suit was filed but were paid after commencement of this action. Defendants concede their liability for liquidated damages under the statute, § 1132(g)(2), for contributions in this second category. A third category of contributions consists of those that both became delinquent and were paid after the suit was filed. Finally, there appear to be some contributions that became due after the suit was filed and that will remain unpaid as of the date of entry of judgment pursuant to the ruling on this motion. We now consider each category in turn.

## A. Contribution Obligations That Both Matured And Were Paid Before Plaintiffs' Filed This Suit

The first group of delinquencies for which plaintiffs seek liquidated damages involve monthly contributions which both became delinquent and were paid before this lawsuit was filed. Defendant's contributions for April and May 1987 and March 1989 were received after the 20th of the month in which they were due. The contributions were paid before the filing of this suit. Plaintiffs seek to collect liquidated damages equal to 20% of these delinquent contributions to the Health and Pension funds and 10% of these delinquent contributions to the other funds.

Defendant does not dispute that the contributions for these months were paid late, but argues that the assessed liquidated damages are unenforceable as a penalty. We agree.

When a trust fund seeks to collect liquidated damages for delinquent contributions which have been paid by the time the suit is filed, mandatory liquidated damages under § 1132(g)(2) do not apply. *Idaho Plumbers* at 215. However, § 1132(g)(2) does not preempt alternative contractual remedies when its provisions do not govern the specific situation in question. *Idaho Plumbers* at 217. Thus, with respect to contributions in this first category, plaintiffs' pursuit of liquidated damages is based on

rights allegedly arising under contract, not under statute.

 Federal common law applies in determining whether a contractual liquidated damages clause is enforceable. *Idaho Plumbers* at 217. According to the seminal Ninth Circuit opinion on this subject, *Idaho Plumbers, supra,* a liquidated damages provision is enforceable in this setting, and not void as a penalty, only if (1) "the harm caused by a breach [is] very difficult or impossible to estimate" and (2) the fixed amount is "a reasonable forecast of just compensation for the harm caused." *Id.,* at 217.

Taken literally, the two prongs of the *Idaho Plumbers* test seem mutually exclusive. Even taken less than literally, there would appear to be some tension between the two requirements. Of course, that same apparent tension accompanies traditional thinking about common law liquidated damages generally. But the Ninth Circuit has added some gloss to the second of these two requirements that has the effect of reducing some of the tension between them. More specifically, the *Idaho Plumbers* court declared that it is the "parties' intentions" that "determine" whether the second prong of the test is satisfied. Amplifying this declaration, the Court went on to state that the people who set the liquidated damages figures "must make a good faith attempt to set an amount equivalent to the damages they anticipate." *Id.,* at 217.

 We infer from this gloss on the meaning of the second prong of the test that the Court of Appeals has recognized the tension between the two prongs and has reduced it by insisting that trial courts focus, in the second prong, on the character of the process that led, at the time the contract language was drafted, to the fixing of the liquidated damages figures or formulas. Given the requirement of the first prong of the test, i.e., that "the harm caused by the breach must be very difficult or impossible to estimate," it would be completely unreasonable to require a party seeking to satisfy the second prong of the test to prove that its "good faith attempt"

to forecast the harm it would suffer was mathematically precise or empirically or conceptually elaborate. Since the purpose of liquidated damages is to assure compensation for harms that are extremely difficult to measure and for which other remedies are not provided (e.g., in this setting, attorney's fees and interest on principal), it would make no sense to require careful delineation, in advance, of the adverse economic effects which the liquidated damages are intended to offset. Instead, what should be required, to satisfy the second prong of the test, is evidence (1) that the drafters gave some thought to the kinds of harms that the liquidated damages provision would embrace, (2) that other, more direct provisions were not made for compensation for at least the bulk of the harms intended to be so embraced, and (3) that it was not obvious, at the time of drafting, that the figure or formula selected would result, in a substantial percentage of the instances in which it might be triggered, in amounts of money flowing from defendants to plaintiffs that clearly would be larger than necessary to compensate for the kinds of harms the plaintiffs were likely to in fact suffer.

Despite the fact that the test, as articulated in *Idaho Plumbers* and as reiterated even more recently in *Parkhurst v. Armstrong Steel Erectors,* 901 F.2d 796 (9th Cir.1990), clearly focuses on the *process* by which the liquidated damages provision was formulated, and on what the drafters could reasonably have *anticipated* in the way of harms before those harms actually were suffered, there is language in both of these recent cases that, quite curiously, seems to suggest that a liquidated damages clause could be deemed void as a penalty simply because of the way it happens to operate in one particular situation. In both of these cases the Court of Appeals seems to have paid considerable attention to the size of the liquidated damages that would result from one particular application of the formulas as compared to the Court's view of the relatively minor harm caused by the breaches (in one case, tardiness in payment of only four days). Of

course, it is possible that the Court of Appeals was suggesting in these cases only that the great apparent disparity (in the specific instances involved) between size of liquidated damages and actual harm suffered was some evidence that no good faith effort to tailor the damages provision to forecasted harm was in fact made. But to the extent that these opinions imply that a liquidated damages clause can be declared void as a penalty simply because one instance of its application results in a substantial disparity between damages assessed and the apparent value of the harm suffered, we simply do not understand how such an approach could be squared with the Court's own test.

In settings like these, involving contracts whose provisions apply to many different employers in many different situations, it would seem virtually inevitable that any formula or approach to liquidated damages would result, occasionally, in assessments whose size would appear to be disproportionate to the harm probably suffered. That is an inevitable by-product of using uniform approaches to a large number of situations. Under the *Idaho Plumbers* test, however, the trial court should be less concerned with individual instances of apparently disproportionate results and more concerned with whether, at the time the liquidated damages clause was written, the drafters made a good faith effort to determine that there would be a rational relationship between the damages that would be paid under the clause and the harms that would be suffered *in most of the situations that were reasonably foreseeable.*

The concerns articulated in the preceding paragraph play no role in the disposition of the motion currently under consideration for the simple reason that the parties have not made clear what the size of the liquidated damages would be in this case for each of the various breaches that occurred, or what relationship might exist between the size of those damages and the otherwise uncompensated harms actually occasioned by those breaches. Thus, any disparity that might exist between these figures cannot be a basis for a finding, on this

record, that the liquidated damages clauses here in issue are void as penalties.

With this understanding of the relevant law, we turn to examine the liquidated damages figures in the contracts that are in issue.

▮▮▮ In the circumstances presented here, plaintiffs clearly can satisfy the first prong of the *Idaho Plumbers* test. When an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge. In order to pursue payment, the trust must engage in a number of activities, such as sending additional collection letters, billing statements, and correspondence, and placing follow-up telephone calls, that are made necessary only by the breach but that are so intertwined with on-going operations that their separate value is most difficult to measure. A trust fund pursuing delinquent contributions suffers additional harm through the diversion of employee and executive time and attention from other business matters. Moreover, the plans are subjected to uncertainty about whether the delinquent contributions will ever be collected and the effect the delinquencies will have on the fund's ability to pay out benefits. We hold that the actual economic impact of these kinds of harms is sufficiently difficult to estimate that liquidated damages provisions for delinquent contributions to fringe benefit trust funds can satisfy the first prong of the *Idaho Plumbers* test.

Thus we turn to the second prong of that test. Because there are two different liquidated damages figures in the contracts in issue here, we shall determine separately for each provision whether the second prong of the test is satisfied. The first of the two provisions establishes liquidated damages at the larger of $20 or 10% of delinquent contributions per delinquency for all funds; the second provision establishes liquidated damages of 20% of delinquent contributions for the Health and Pension trusts in the event of multiple delinquencies (as well as shortages and audits)

and upon referral of an account to a collection attorney.

With respect to the 10% figure, it is clear that the drafters gave some thought to the kinds of harms that the liquidated damages provision would embrace and that they devoted a substantial effort to making a judgment about what level of liquidated damages would be appropriate. The principal kinds of harms they considered, as evidenced in minutes of meetings, memoranda, and provisions of contracts were (1) additional administrative costs that would be occasioned by the breaches, e.g., sending delinquency notices and follow-up letters, calculating the amount of liquidated damages due, and referring the matter to collection counsel, (2) loss of "investment return" or "interest", and (3) possible delays in making payments to claimants, as well as uncertainty about ability to meet all legitimate demands on the plans' funds. See Ex. 6 to the Carroll Decl., filed April 10, 1991, and Ex. 2, page 10, to the West Decl., filed April 10, 1991.

The first difficulty with the way the plans fixed the 10% figure is that "lost investment return" or "interest" is a type of damage for which recovery is otherwise provided and that is quite readily measurable. Thus, it clearly was improper to include this kind of harm as one of the bases for a forecast of liquidated damages. Moreover, we have no basis, on the record presented, for ascertaining how much of the 10% figure the drafters attributed to this kind of harm. Lost interest could have represented a major portion of the 10% or a small portion. Since the *burden is on plaintiffs* to show that the figure they selected was the product of a good faith effort to forecast only the *otherwise uncompensated* harms they would suffer, we cannot simply assume that the "interest" component of the 10% figure was *de minimis*.

A second difficulty is that there is some evidence that would support an inference that one consideration that played some role (of unclear dimensions) in setting the 10% figure was a desire to *penalize* employers who made tardy payments *and* to *deter* such tardiness in all employers who were obligated to make payments to the funds. While it is very clear that deterrence was a major factor in the decision (made initially in 1983) to increase the liquidated damages figure in certain situations to 20% of all delinquent contributions, one document provided by plaintiffs seems to suggest that penalty/deterrence considerations also had played roles in the minds of the people who fixed these figures before 1983. See references to penalties and deterrence in characterizations of pre–1983 rules and why those rules and measures were perceived as not working in Carroll Memorandum to Boards of Trustees, July 7, 1989, pages 2–3, included in Exhibit 6 to Carroll Decl. filed April 10, 1991 (hereafter we cite this source as Carroll Memo. of July 7, 1989).

Yet another difficulty with the 10% figure is exposed by the way counsel for plaintiff has justified, in a memorandum to the Boards of Trustees, the higher 20% figure that applies (under some of the Plans) when a delinquent account is referred to an attorney for collection. After emphasizing that the "rationale" behind the increase to the 20% level for cases referred to counsel was "to make the penalty for late payment harsh and well publicized, in the hope that an employer with cash flow problems would ... see to it that the trust funds were paid timely," counsel wrote:

> "An additional consideration was the cost of collection. Whenever an employer is referred to counsel the cost to the trust for legal services is usually 15% of any amounts collected. It was felt that a 20% liquidated damage would recoup those costs *and also reimburse the trust for any additional administrative expenses*." Carroll Memo of July 7, 1989, at 4 (emphasis added).

Under this account, it appears that the drafters of the liquidated damages provisions "felt" that the *5%* that would remain of the liquidated damages, after the 15% was charged off to the collection effort by counsel, would be *sufficient* to "reimburse the trust for any additional administrative expenses" occasioned by the tardiness. It

is noteworthy that the Boards felt that the 5% figure was sufficient with respect to cases that had to be referred to counsel for collection, where the additional administrative burdens were certain to be greater than in the cases where payment was made within six to eight weeks, i.e., the cases that were not referred to counsel because they had been resolved relatively quickly. If 5% was enough to cover the additional costs for the more troublesome cases, it is not at all clear how the 10% figure could represent a rational, good faith forecast of the extra costs that would be incurred in the less troublesome matters.

For all the reasons set forth above, we cannot find that the 10% figure passes the second prong of the *Idaho Plumbers* test. While it is clear that real effort went into the process of fixing this figure, it also is clear that it cannot be considered a reasonable forecast of only the otherwise uncompensated harm that breaches were likely to cause. Thus we are compelled to declare it unenforceable as a penalty.

We reach the same conclusion, with much less difficulty, with respect to the 20% figure. There is substantial support for a finding that this figure was inspired in large measure by an intent to punish rather than to provide fair compensation. See Carroll Memo of July 7, 1989, at 3. Moreover, it is clear that most of this 20% figure was based on the 15% contingency fee that counsel would receive for his collection efforts. Under provisions of both the relevant statutes and the contracts, however, counsel is entitled to recover fees in matters in which the funds prevail. Since a separate avenue for collecting attorneys' fees is provided, such fees cannot be considered "otherwise uncompensated." Moreover, attorneys fees are not the kinds of harms that are so difficult or impossible to measure that they are appropriate subjects of *liquidated* damages provisions.

Finally, we note that the fact that plaintiffs may decide not to try to enforce, in certain instances, their contractual and statutory rights to attorneys fees cannot save the 20% figure. Analysis under *Idaho Plumbers* focuses on the time the figure was set, and asks whether that figure reflects good faith forecasts only of those kinds of harms that otherwise would go uncompensated and that are extremely difficult to measure. Since the 20% figure fails this test, we are constrained to declare it void as a penalty.

By virtue of the conclusions reached above, plaintiffs may not collect *contract* based liquidated damages for any of the categories of tardy payments that remain in issue in this case. The remaining issue is whether plaintiffs have a *statutory* right to liquidated damages for any or all of those categories of tardy contributions.

### B. Contribution Obligations That Both Matured And Were Paid After Plaintiffs' Filed This Suit

Plaintiffs also seek to collect liquidated damages on contributions which became delinquent and were paid after this suit was filed. Contributions for August through November 1989 and August through October 1990 were paid after the 20th day of the month in which they were due. All of these contributions became delinquent after this suit was filed.

■ These contributions were neither unpaid at the time the suit was filed nor remain unpaid at the time of judgment. In this setting we believe that the authorities by which we are bound give us no choice but to hold that § 1132 does not apply. In *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 797 (9th Cir.1990), the Court of Appeals declared, without any intimation of qualification, that "[w]e have held that unpaid contributions must exist at the time of suit for statutory liquidated damages to be awarded." See also *Carpenters Health and Welfare Fund of Philadelphia and Vicinity, et al. v. Building Tech, Inc., et al.*, 747 F.Supp. 288, 298 (E.D.Pa.1990).

Plaintiffs point out, accurately, that the facts in neither *Parkhurst* nor *Idaho Plumbers* (on which the *Parkhurst* opinion relied) involved delinquencies that arose after suit was filed. Plaintiffs also point out that neither of these Ninth Circuit opinions purports to analyze the dynamic between

the statute and the kind of delinquency we consider here, or to consider whether literal application to these kinds of delinquencies of the rule articulated in *Parkhurst* would frustrate achievement of the objectives that informed Congress' enactment of these statutory provisions. While these are accurate statements about *Parkhurst* and *Idaho Plumbers,* we do not feel that it is appropriate for us to refuse to take at face value, and thus to follow, the clear, unqualified language from the Court of Appeals for the Circuit in which we sit. If plaintiffs feel that the Court of Appeals could not have intended trial courts to apply the *Parkhurst* language literally to situations like the one we face here, plaintiffs should appeal our decision and ask the higher court to address this situation squarely.

Regardless of whether our decision is appealed, we feel constrained to comment about two of the conceptually independent bases that defendants have suggested for their view that the statute does not reach the situation here in issue, i.e., where the delinquencies do not arise until after suit is filed, then are paid prior to entry of judgment. One such basis is the theory that Congress intended the liquidated damages to be available only with respect to contributions for which a plan is forced to file a lawsuit. While we are not sure whether the legislative history supports this theory, it is true that if we focus on this theory we can distinguish the category of delinquencies for which defendants concede the statute makes liquidated damages mandatory: delinquencies that existed at the time plaintiffs filed suit and that were paid before entry of judgment.

If we focus on the second basis for defendant's view that the statute does not reach delinquencies that arise only after suit is filed, however, we do not see how we could distinguish the category of delinquencies for which defendants concede liability for statutory liquidated damages, i.e., delinquencies that arose prior to the filing of the suit and which were paid before entry of judgment. The second proffered basis for defendants' view of the reach of the statute is grounded more directly in the statutory language, which indicates that a court may award liquidated damages on amounts of unpaid contributions for which the court determines, in its final judgment, that the defendant is liable. If a defendant has paid the underlying contributions before judgment is entered, unpaid contributions would not be part of the judgment and there would be no such contributions against which to apply the 20% figure in order to calculate the amount of liquidated damages. It follows, argue defendants, that Congress did not contemplate awards of statutory liquidated damages in this kind of circumstance. In essence, defendants seem to argue that there would be no jurisdictional predicate 􀀀 an award of liquidated damages if th􀀀re were no judgment requiring payment of past due contributions. The difficulty with this line of argument is that it would seem to apply equally to contributions that became delinquent before plaintiffs filed suit but that were paid thereafter. The same quasi-jurisdictional shortfall would exist, yet defendants seem to concede that they would owe statutory liquidated damages on these amounts. That concession seems thoroughly consistent with the overall policy objective of these parts of the ERISA scheme, which is to encourage employers to make timely payments.

These are policy debates, however, that we do not feel free to pursue. They are matters either for Congress or for the Court of Appeals. Because we feel bound by the language in *Parkhurst,* we hold that plaintiffs have failed to establish that they have a statutory entitlement to liquidated damages on delinquencies that arose after suit was filed and that have been paid prior to entry of judgment.

## C. *Delinquencies That Have Arisen After Plaintiffs Filed Suit And That Remain Unpaid At The Time Judgment Is Entered.*

Our disposition of plaintiffs' claim for statutory liquidated damages on the kinds of delinquencies considered in the preceding section necessarily foretells our disposition of plaintiffs' claim for statutory

liquidated damages with respect to delinquencies that arose after plaintiffs filed suit and that remain unpaid at the time of judgment. Here, by hypothesis, there would be a judgment with respect to certain owed contributions, so that arguable statutory obstacle could be overcome. But the language of *Parkhurst* would remain, and that language leaves us bound to hold, again, that liquidated damages are available in this Circuit, at least until the Court of Appeals considers these matters afresh, only with respect to contributions that had become delinquent before the suit was filed. Thus, we are constrained to hold that plaintiffs have failed to show that they have a statutory entitlement to liquidated damages for contributions that became delinquent after they filed suit and that remain unpaid on the date judgment is entered in this case.

### CONCLUSION

For all the reasons set forth in the preceding sections, we hereby ORDER entry of SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS on the liquidated damages claims that remain in dispute between the parties in this civil action.

IT IS SO ORDERED.