**CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiffs,**

v.

**The INDUSTRIAL ERECTORS, INC., Defendant.**

No. 93 C 1972.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1993.

Janet L. Adams, Hugh J. McCarthy & Associates, Ltd., Chicago, IL, for plaintiffs.

Brian Steinback, Banta, Cox & Hennessy, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is the Plaintiff's Motion for Partial Summary Judgement.

### FACTS

The parties agree on the following facts. On June 9, 1975, Plaintiffs, the Chicago District Council of Carpenters Pension Fund, the Chicago District Council of Carpenters Welfare Fund and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program ("Plaintiffs"), and Defendant, The Industrial Erectors, Inc. ("Defendant") entered into an Agreement ("The Agreement") binding the Defendant to the terms of a Collective Bargaining Agreement negotiated between the Carpenters' Union and the Mid–America Regional Bargaining Association (MARBA) and any subsequent Collective Bargaining Agreement. (Plaintiff's Memorandum in Support of Partial Summary Judgement, Exhibit A ¶ 2.) The Agreement also binds the Defendant to the terms of the Trust Agreements which create the Plaintiff Trust Funds and obligate the Defendant to make prompt contributions to the Plaintiffs for each hour worked by their carpenter employees at the rate per hour specified by the Collective Bargaining Agreement. *Id.;* Exhibit B §§ 12.1, 13.1, 14.1.

Plaintiffs bring this action, pursuant to Section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132. In their Complaint, filed April 1, 1993, Plaintiffs allege that Defendant, in violation of its obligation under the Agreement, has failed to submit monthly contributions and contribution reports to the Plaintiffs for the months of February, 1993 through the present. (Complaint at ¶ 7(a).) Plaintiffs state further that Defendant has underpaid the required contributions for the period of July 1990 through June 1991 and for the month of January, 1992. *Id.* at ¶ 7(b) and (c). Finally, Plaintiffs state that Defendant has consistently failed to submit its monthly contributions in a timely manner. *Id.* at ¶ 7(d).

Except for the period from January 21, 1991 to November 5, 1991, Defendant admits that it was and is bound by the Collective Bargaining Agreement, the Trust Agreements and their amendments. Defendant also admits that, since October 1992, it has not submitted its monthly contributions to the Plaintiff in a timely manner. (Defendant's Response to Plaintiff's Motion for Partial Summary Judgement at 2, 4.) However, Defendant denies that it is currently delinquent in submitting its monthly contributions for July 1993.

Plaintiffs assert that due to Defendant's continued untimely payment of contributions, the Plaintiffs, as a matter of law, are entitled to (1) interest on the untimely contributions, (2) liquidated damages on the untimely contributions (3) attorneys' fees and costs, and finally, (4) an injunction ordering Defendant to submit monthly contribution reports and contributions on a timely basis.

In response, Defendant contends that (1) Plaintiffs are not entitled to interest or liquidated damages under Section 1132(g), (2) Plaintiffs are not entitled liquidated damages under the Collective Bargaining Agreement and the Trust Agreements, and (3) Plaintiffs are not entitled to attorneys' fees and costs under Section 1132(g).

### ANALYSIS

Under Rule 56(c), summary judgement is proper "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c). Summary judgement shall be entered against a party who "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The showing made by the non-moving party must be more than merely colorable. Summary judgement is appropriate "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. Defendant's Liability for Contributions After January 21, 1991

■ Defendant argues that after January 21, 1991, or alternatively between January 21, 1991 and November 5, 1991, Defendant was not obligated to make contributions to the Plaintiffs. On January 21, 1991, the Union caused its membership to withhold its services from the Defendant because Defendant had been delinquent in paying its required contributions to the Plaintiffs. When the Defendant agreed on November 5, 1991 to pay at least $30,000 of what it owed, the withholding of services ended. From these facts, Defendant concludes that when the Union caused its membership to withhold its services, the Union effectively cancelled the Collective Bargaining Agreement.[1] Once the Union effectively cancelled the Collective Bargaining Agreement, the Defendant claims that Defendant had no obligation to pay contributions or pay interest and liquidated damages on the late contributions.

Even assuming that the withholding of services effectively cancelled the Collective Bargaining Agreement between the Union and the Defendant, the Defendant still has an obligation to make contributions to the Plaintiff. Section 1145 of ERISA requires employers to make all pension payments "not inconsistent with the law." In *Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir.1988), the Seventh Circuit stated, "this language was added to ERISA "to simplify delinquency

collection" by freeing pension and welfare funds from defenses that pertain to the unions' conduct." The *Robbins* Court held that the employer was not relieved of his duty to make contributions to the pension and welfare trusts because of undisclosed side agreements between employers and the unions regarding such contributions. *Id.* at 333–334. The Court recognizes that the present case does not involve undisclosed side agreements. However, the Court determines that allowing the Defendant to defend against the Plaintiffs' claim for contributions by asserting an effective cancellation of the Collective Bargaining Agreement due to an employee strike would similarly complicate collection of delinquent contributions.

The Seventh Circuit in *Central States, S.E. & S.W. v. Gerber Truck*, 870 F.2d 1148, 1152 (7th Cir.1989) cites comments made by Representative Thompson concerning § 1145 of ERISA:

> Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law—other than 26 U.S.C. 186. Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises.

126 Cong.Rec. 23039 (Rep. Thompson.) Allowing the Defendant to avoid paying required contributions because the Union encouraged the employees to withhold their service because Defendant was delinquent in paying its required contributions condones total subversion of the policy behind Section

---

1. In the Agreement, the Defendant agrees to be bound by the terms and conditions of the Collective Bargaining Agreement between the Union and the MARBA. (Plaintiffs' Memorandum; Exhibit A ¶ 2.)

1145. Consequently, this Court decides that the Defendant cannot avoid its obligation under the Agreement by arguing that the Union effectively cancelled the Collective Bargaining Agreement when it encouraged the employees to withhold their services.

### B. *Section 1132(g)*

As the Court has resolved any dispute regarding the obligation of the Defendant to make contributions to the Plaintiff, the Court confronts the issue of the amount of damages resulting from Defendant's delay in discharging debts.[2] Section 1132(g) of ERISA governs the resolution of this issue.

Section 1132(g)(2) reads as follows:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgement in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under federal or state law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).[3]

### 1. *Presently Overdue Unpaid Contributions*

■ To the extent that there are presently unpaid overdue contributions, the Court holds that the Plaintiffs are entitled to damages under Section 1132(g)(2)(A). Defendant admits that he is bound to the Agreement and consequently, to the Collective Bargaining Agreement and the Trust Agreements. The Trust Agreements obligate the Defendant to make prompt contributions to the Plaintiffs for each hour worked by their carpenter employees at the rate per hour specified by the Collective Bargaining Agreement. (Plaintiffs' Memorandum; Exhibit B §§ 12.1, 13.1, 14.1.) The Court has already held that Defendant cannot avoid its obligations under the Agreement for the period of January 21, 1991 to November 5, 1991. Thus, the Plaintiffs are entitled to all remaining unpaid contributions pursuant to § 1132(g)(2)(A).

### 2. *Overdue Unpaid Contributions at the Initiation of Suit*

■ Even if there are presently no unpaid contributions, Plaintiffs are entitled to attorney's fees and to an award of interest and liquidated damages for the unpaid contributions which existed at the time the suit was filed. *See,* 29 U.S.C. § 1132(g)(2)(B), (C) and (D). Section 1132 suggests that an award of interest, liquidated damages and attorney's fees depends on a judgement in favor of the plan. The Fifth Circuit has held that a district court's grant of ancillary relief (interest, liquidated damages, attorney's fees or a decree of entitlement to receive contributions on a timely basis) is a judgement in favor of

---

**2.** In their Motion for Partial Summary Judgement, Plaintiffs state that Defendant is currently delinquent in submitting its monthly contributions for July, 1993. However, in their Reply Brief, Plaintiffs acknowledge that Defendant has belatedly submitted its contributions through August, 1993, but is presently delinquent in submitting reports and contributions for September, 1993. In its Sur-reply, Defendant does not address Plaintiffs' allegation that Defendant is delinquent in submitting its contributions for September 1993. Thus, the Court is unclear as to

whether there are presently overdue contributions which are unpaid.

**3.** 29 U.S.C. § 1145 states, "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

the plan. *See, Carpenters, Etc., Health Ben. Fund v. Ryan Const.*, 767 F.2d 1170, 1173–1174 (5th Cir.1985). Specifically, the Fifth Circuit stated,

> A judgement in [a] suit against a delinquent employer to enforce his obligations under § 1145 to make payments in accordance with the employee benefit [plan] is no less a 'judgement in favor of the plan' under § 1132(g)(2) than would be one that decreed not only this [ancillary] relief but also—had the employer not paid his delinquent contributions after suit was filed—the delinquent contributions.

767 F.2d at 1174.

Furthermore, many circuits have held that as long as there were unpaid contributions at the time the plaintiff filed suit, the plaintiff is entitled to interest and liquidated damages even if the Defendant tendered the unpaid contributions prior to judgement. *See, Idaho Plumbers & Pipefitters v. United Mechanical*, 875 F.2d 212, 215 (9th Cir.1989). *Carpenters & Joiners Welfare Fund v. Gittleman Corporation*, 857 F.2d 476, 478 (8th Cir.1988); *Carpenters, Etc., Health Ben. Fund v. Ryan Const.*, 767 F.2d 1170, 1173–1174 (5th Cir.1985); *Carpenters Health & Welfare Fund of Philadelphia and Vicinity v. Building Tech., Inc.*, 747 F.Supp. 288 (E.D.Pa.1990); *Bennett v. Machined Metals Co., Inc.*, 591 F.Supp. 600, 604 (E.D.Pa.1984). In dicta, the Seventh Circuit reflected the same view stating,

> After suit is filed, we doubt that employers who are delinquent in their contributions can avoid the mandatory relief provisions of section 1132(g)(2) through the device of offering to pay only the overdue contributions. A settlement will require the agreement of the parties on the entire case—not merely part of the case.

*Gilles v. Burton Construction Company*, 736 F.2d 1142, 1146 n. 6 (7th Cir.1984).

■■■ The purpose of § 1132(g) is to provide employee benefit plans with a greater ability to collect delinquent employer contributions and to compensate employee benefits plans for the loss of use and the cost of collecting delinquent payments. *Ryan Const.*, 767 F.2d at 1174. With such a statutory purpose, it is inconceivable that § 1132(g) would not award ancillary relief if the Defendant tendered its unpaid contributions prior to judgement. *Id.*

In its Response to Plaintiffs' Motion for Partial Summary Judgement, Defendant does not dispute the fact that there were unpaid contributions at the time Plaintiffs initiated this suit. Instead, Defendant argues that Plaintiffs are not entitled to interest and liquidated damages unless there are unpaid contributions at the time of judgement. Defendant relies on *Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388–389 (6th Cir.1991).

In *C.J. Rogers*, the Sixth Circuit held that the provisions of § 1132(g) apply only if there are unpaid contributions on the day of judgement. *Id.* at 388. The *C.J. Rogers* Court rejects the decision of courts which state that the provisions of § 1132(g)(2) apply as long as there are unpaid contributions at the time the suit is filed. *Id.* at 388–389, citing *Idaho Plumbers & Pipefitters*, 875 F.2d at 215; *The Gittleman Corp.*, 857 F.2d at 478; *Building Tech., Inc.*, 747 F.Supp. 288; *Bennett*, 591 F.Supp. at 605–606; *Trustees of the Glaziers Local 963 Pension, Welfare, and Apprentice Funds v. Walker and Laberage Co., Inc.*, 619 F.Supp. 1402, 1405 (D.Md.1985); *Ryan Construction Co.*, 767 F.2d at 1174. In support of its decision, the Sixth Circuit states only,

> [Section 1132(g)(2) ] provides that upon 'a *judgement* in favor of the plan' the court shall award the plan 'the unpaid contributions' and 'interest on the unpaid contributions.' (citations omitted) Thus it is clear that the provisions of that section apply only if there were unpaid contributions on the date of the award.

*C.J. Rogers*, 933 F.2d at 388. (emphasis in original) This Court is not persuaded by the Sixth Circuit's reasoning and its departure from the reasoning of the four other circuits cited above. Consequently, this Court holds that due to the unpaid contributions at the initiation of the suit, Plaintiffs are entitled interest and liquidated damages under § 1132(g)(2)(B) and (C).

██ Obviously, under § 1132(g)(2), the Plaintiffs are only entitled to interest and liquidated damages on those contributions unpaid at the time of the suit and not on delinquent contributions which were paid prior to the filing of the suit. Additionally, to the extent that contributions became delinquent during the pendency of this suit, the Plaintiffs are also entitled to interest and liquidated damages on these delinquent contributions. *See, Pipe Fitters' Welfare Fund, Local 597 v. North American Heating and Air Conditioning,* 1985 WL 1948 (N.D.Ill. 1985), *aff'd,* 799 F.2d 753 (7th Cir.1986) (holding that to allow an employer to continue to make untimely payments during the pendency of suit and yet incur no liability, defeats the purpose of the statute).

### 3. *Appropriate Interest Rate on Unpaid Contributions*

As noted above, the language of § 1132(g)(2) provides, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2).

██ Plaintiffs agree with Defendant's contention that neither the Trust Agreements nor the Collective Bargaining Agreement provide a rate for interest on unpaid contributions. However, Plaintiffs assert that Resolution 7–1984 establishes a 1.5% interest rate on deficiencies not timely paid. (Plaintiffs' Reply; O'Grady Affidavit Exhibit 1.) The Plaintiffs argue further that the Trust Agreements give the trustees authority to amend the Trust Agreements by majority vote and resolution, and thereby bind all parties to the Trust Agreements. (Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgement; Exhibit C Part I Article XIV Section 1, Exhibit C Part II Article VII, Exhibit B Article XII Section 12.2, Exhibit B Article XIII Section 13.2 and 13.3.) Thus, Plaintiffs conclude that Defendant is bound by Resolution 7–1984's amendment of the Trust Agreements establishing a 1.5% interest rate.

Resolution 7–1984 reads in pertinent part: [T]he Trustees approve and ratify the past practice of the Trust Fund of assessing interest on audit deficiencies at the rate provided in Section 6621 of the Internal Revenue Code. In addition, effective April 1, 1985, the rate of interest that will be due on audit deficiencies that are not paid within ten days of when the employer is notified of the amount owed, shall be 1.5% per month. Interest shall begin to accrue from the date the contributions were due and not from the date the audit revealed they were due.

(Chicago District Council of Carpenters Welfare Fund, Minutes of the Board of Trustees, March 14, 1985 at 3.) Defendant argues that the language of Resolution 7–1984 suggests that the 1.5% interest rate applies only when a compliance audit reveals a deficiency and the employer does not pay the audit deficiency voluntarily. Thus, Defendant concludes that Resolution 7–1984 does not apply to late contributions. This Court disagrees.

A late contribution certainly creates a deficiency and whether an audit or an unofficial examination of the employer's accounts reveals the deficiency, Resolution 7–1984 approves a 1.5% interest rate per month assuming the employer does not pay the deficiency within ten days of notification. This Court concludes that if the employer has not paid the amount owing within ten days of notification of the deficiency, the applicable interest rate on contributions still unpaid at the time Plaintiffs initiated this litigation is 1.5% and not the interest prescribed under section 6621 of Title 26.

██ Counter to Defendant's assertion, the Court does not believe that 1.5% per month is an unreasonable interest rate. Section 1132(g)(2) allows the plans to include a 20% liquidated damages provision. Thus, the Court determines that a 1.5% interest rate per month, amounting to an 18% annual interest rate, cannot be considered against public policy.

██ The Court does agree with Defendant that Resolution 7–1984, and accordingly, the 1.5% interest rate, applies only to late contributions owed to the Welfare Fund. There is no evidence that the Pension Fund provided in its Trust Agreement, or in an amendment thereto, an interest rate for late

payments other than the interest rate prescribed under section 6621 of Title 26.

#### 4. *Appropriate Rate for Liquidated Damages for Unpaid Contributions*

Subsection 1132(g)(2)(C)(ii) applies when (1) the fiduciary obtains a judgement in favor of the plan, (2) unpaid contributions exist at the time of the suit and (3) the plan provides for liquidated damages. *Idaho Plumbers & Pipefitters,* 875 F.2d at 215. (citations omitted.)

First, the Plaintiffs have obtained a judgement in favor of the plan for all remaining unpaid contributions and for interest and liquidated damages on all unpaid contributions at the time the suit was filed. Second, in their Summary Judgement Briefs, the parties do not controvert the existence of unpaid contributions at the time the Plaintiffs initiated suit. Finally, two of the Trust Agreements provide for liquidated damages in the amount of 1.5% per month on the contributions unpaid.[4] (Plaintiffs' Brief in Support of its Motion for Partial Summary Judgement; Exhibit C Part I Resolution 39–1976; Exhibit C Part II Resolution 13–1976.)

Once the Court determines that Section 1132(g)(2)(C)(ii) applies, the provisions are mandatory. *Idaho Plumbers & Pipefitters,* 875 F.2d at 215. Thus, the Court concludes that the Welfare Fund and the Pension Fund are entitled to liquidated damages in the amount of 1.5% per month for the unpaid contributions existing at the time the Plaintiffs initiated suit. As per Section 1132(g)(2)(C)(ii), such liquidated damages may not exceed twenty percent of the unpaid contributions.

#### 5. *Attorney's Fees and Costs*

Attorney's fees and costs are available under Section 1132(g)(2)(D) only when there is a judgement in favor of the plan. *Idaho Plumbers & Pipefitters,* 875 F.2d at 218. Because the Court has awarded judgement in favor of the Plaintiffs under Section 1132(g)(2)(A) for any remaining un-

paid contributions and under Sections 1132(g)(2)(B) and 1132(g)(2)(C)(ii) for interest and liquidated damages for any unpaid contributions existing at the initiation of this suit, Plaintiffs are entitled to attorney's fees and costs pursuant to Section 1132(g)(2)(D).

However, the Court determines that the Plaintiffs' claim for attorney's fees and costs is not adequately substantiated. Thus, the Court will allow the parties to submit additional exhibits and affidavits concerning the appropriate amount of fees and costs before the Court determines whether an award of $2,660.51 is a reasonable award of fees and costs.

#### C. *Liquidated Damages for Late Contributions Paid Prior to the Initiation of Litigation*

Plaintiffs argue that in addition to liquidated damages assessed for unpaid contributions at the time the suit was filed, they are entitled to liquidated damages for delinquent contributions paid prior to the initiation of litigation as provided in the Trust Agreements. The Pension Fund and the Welfare Fund provide for liquidated damages in the amount of 1.5% per month on the contributions unpaid. (Plaintiffs' Brief in Support of its Motion for Partial Summary Judgement; Exhibit C Part I Resolution 39–1976; Exhibit C Part II Resolution 13–1976.)

Defendant counters that the plaintiffs' contractual claim for liquidated damages is preempted by Section 1132(g)(2). Defendant relies on *Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476, 478, 479 (8th Cir.1988). In *Gittleman Corp.,* the Eighth Circuit ruled that liquidated damages were not recoverable under a collective bargaining agreement on the grounds that "[t]he detail and comprehensiveness of the section 1132(g)(2) remedy supports the conclusion that it was meant to supplant remedies that otherwise would be available." The *Gittleman Corp.* court reasoned further,

> To allow the funds to recover liquidated damages outside the statutory framework

---

4. The third Trust Agreement provides for liquidated damages, but does not provide a specific percentage rate. (Plaintiffs' memorandum; Exhibit C Part III Article IV Section 4.)

of section 1132(g)(2), with its 20% limitation, would be to allow funds with no "unpaid contribution" to avoid the strictures of the 20% rule and in some cases to afford them a fuller remedy than that available to funds with "unpaid contributions." Congress cannot have intended such an anomaly.

857 F.2d at 478–479.

Despite the Eighth Circuit's opinion in *Gittleman Corp.*, this Court agrees with the Ninth Circuit, *Idaho Plumbers & Pipefitters v. United Mechanical*, 875 F.2d 212, 216–217 (9th Cir.1989) and the Sixth Circuit, *Michigan Carpenters Council v. C.J. Rogers, Inc.*, 933 F.2d 376, 389–390 (6th Cir.1991), that the legislative history suggests that Congress did not intend for Section 1132(g) to preempt all contractual claims for liquidated damages. A House Committee Report states,

> The Committees [sic] amendment provides that in the case of a civil action by any person to collect delinquent multiemployer plan contributions, regardless of applicable law, the court before which the action is brought may award the plaintiff (1) reasonable attorneys fees, (2) court costs, and (3) liquidated damages not to exceed 20 percent of the amount of delinquent contributions as determined by the court ... The bill preempts any State or other law which would prevent the award of reasonable attorneys fees, court costs or liquidated damages or which would limit liquidated damages below the 20% level. However the bill does not preclude the award of liquidated damages in excess of the 20 percent level where an award of such a higher level of liquidated damages is permitted under applicable State or other law. *The Committee amendment does not change any other type of remedy permitted under State or Federal law with respect to delinquent multiemployer plan contributions.*

H.R.Rep. No. 869, 96 Cong., 2d Sess. (1980) (Part II), *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 3037–38. (emphasis supplied). The legislative history indicates that Congress intended only to preempt laws limiting liquidated damages to an amount below the twenty percent level when the terms of Section 1132(g)(2) are satisfied. *Idaho Plumbers & Pipefitters*, 875 F.2d at 217; *C.J. Rogers*, 933 F.2d at 390.

In accordance with the Ninth and Sixth Circuits, this Court determines that Section 1132(g)(2) does not preempt contractual remedies providing liquidated damages for delinquent contributions assuming such delinquent contributions were not unpaid at the time the Plaintiffs filed suit. Having decided that ERISA does not preempt the federal common law of liquidated damages where Section 1132(g) does not apply, the Court must resolve whether the liquidated damages provision at issue is void as a penalty. *See, Idaho Plumbers & Pipefitters, ·875 F.2d at 217.

 A contractual provision allowing for liquidated damages must meet two requirements for enforceability. *Id.,* citing *United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331, 337 (7th Cir.1975). First, the harm caused by a breach must be very difficult or impossible to estimate. *Id.* Second, the amount fixed must be a reasonable forecast of just compensation for the harm caused. *Id.* The parties intentions determine whether the second requirement is satisfied. *Id.* They must make a good faith attempt to set an amount equivalent to the damages they anticipate. *Id.,* citing *Thorleif Larsen & Son,* 519 F.2d at 333.

 The Court holds that the first prong of the test is met because the harm caused by delinquent contributions is very difficult to estimate. Contrary to Defendant's assertion, the harm caused by delinquent contributions is not limited to the loss of the use of the money. In addition to the loss of the use of the money, the Plaintiffs must incur the administrative cost of collection efforts which involve additional collection letters, billing statements and correspondence. Such collection efforts are "so intertwined with ongoing operations that their separate value is most difficult to measure." *Board of Trustees v. Udovch,* 771 F.Supp. 1044, 1049 (N.D.Cal.1991). Moreover, employees and executives of the Plaintiffs will have to divert their time from their normal duties to con-

tend with delinquent employers. Finally, the Plaintiffs are uncertain as to whether they will ever be able to collect the delinquent contributions and as to what effect the inability to collect will have on the Plaintiffs' ability to pay out benefits. *Id.*

 Addressing the second prong of the *Idaho Plumbers & Pipefitters* test, the Court must determine whether the provision for liquidated damages in the amount of 1.5% per month on the delinquent contributions paid prior to the initiation of the litigation is a reasonable forecast of just compensation for the harm caused. In *Udovch*, the court stated that the second prong requires evidence that

> (1) the drafters gave some thought to the kinds of harm that the liquidated damages provision would embrace, (2) that other more direct provisions were not made for compensation for at least the bulk of the harms and intended to be so embraced, and (3) that it was not obvious, at the time of drafting that the figures or formulas selected would result, in a substantial percentage of the instances in which it might be triggered, in amounts of money flowing from defendants to plaintiffs that clearly would be larger than necessary to compensate for the kinds of harms were likely to in fact suffer.

771 F.Supp. at 1048.

This Court agrees with Defendant that the Plaintiffs have provided no evidence to suggest that the drafters of the liquidated damages provisions gave any thought to the kinds of harm which the liquidated damages provisions would embrace. Moreover, since it is unclear what harms the drafters intended the liquidated damages clause to cover, the Court cannot determine whether it was obvious at the time of drafting that a rate of 1.5% would result in amounts larger than necessary. As the Court cannot decide whether liquidated damages in the amount of 1.5% per month was a reasonable forecast of just compensation for the harm caused, the Plaintiffs are not entitled to summary judgement on the issue of contractual liquidated damages.

*Injunctive Relief*

 In their Memorandum in Support of their Motion for Summary Judgement, the Plaintiffs ask the Court to order the Defendant to submit monthly contribution reports and contributions on a timely basis. However, nowhere in their various memoranda do the Plaintiffs present reasons why they are entitled to injunctive relief. As the Plaintiffs' request for equitable relief remains unsupported, they are not entitled, as a matter of law, to a court order requiring Defendant to submit monthly contribution reports and contributions on a timely basis.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgement is granted in part and denied in part.

Summary judgement is granted with regard to the following: (1) Defendant must pay Plaintiffs all delinquent contributions. 29 U.S.C. § 1132(g)(2)(A); (2) Defendant must pay interest and liquidated damages on all delinquent contributions unpaid at the time suit was initiated and on all contributions which became delinquent during the pendency of the suit. 29 U.S.C. § 1132(g)(2)(B), (C)(ii); and (3) Defendant must pay Plaintiffs' reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D).

Summary judgement is denied with regard to the following: (1) an injunction order requiring Defendant to submit future monthly contribution reports and contributions on a timely basis and (2) payment of contractual liquidated damages for delinquent contributions paid prior to the initiation of the suit.

Within thirty days of the date of this Order, the Plaintiffs shall submit a carefully calculated and clearly presented memorandum with supporting affidavits detailing (1) unpaid contributions at the initiation of the suit, (2) contributions which became delinquent during the pendency of the suit, (3) interest and liquidated damages for the categories of contributions listed in (1) and (2), and (3) reasonable attorney's fees and costs.